## HOGAN *v.* STATE.

[90 South.   99.   No. 21990.]

CRIMINAL LAW. *Homicide. Circumstantial evidence must exclude every other hypothesis; evidence leaving it indifferent which hypothesis is true is insufficient; evidence held insufficient to sustain conviction of murder.*

While circumstantial evidence is in its nature capable of producing the higest degree of moral certainty, yet experience and authority admonish us that it is a species of evidence in the application of which the utmost caution and vigilance should be used.  It is always insufficient, where, assuming all to be true which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth.  Whenever the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be.  The facts in this case examined, and *held* insufficient to sustain a conviction.

APPEAL from circuit court of Bolivar county.

HON. W. A. ALCORN, Judge.

Sam Hogan was convicted of murder, and he appeals. Reversed, and defendant discharged.

*Sillers, Clark & Sillers,* for appellant.

*H. C. Holden,* assistant attorney-general, for the state.

ETHRIDGE, J., delivered the opinion of the court.

Sam Hogan was indicted and convicted for the murder of Isabella Gatewood.  The evidence is circumstantial, and the defendant at the close of the state's evidence moved the court for a directed verdict of not guilty, which motion was overruled, and the defendant rested his case upon the state's evidence.

The deceased lived in the house with the defendant and his wife. The testimony shows that Dr. Allen, a physician, made an examination of the head of the deceased before a coroner's jury on Monday following her death on Sunday. The doctor testified that there were three wounds on the back of the head near the ear and one upon the face. He was unable to say whether the skull was fractured or not, and he made no examination of the rest of her body. He also testified: That on Monday night preceding this examination he was called to see the deceased at the residence of the defendant, the defendant coming for him, and when he visited her in the house of the defendant he found her throat bruised, and she stated that she had been choked by two men, one of whom she stated that she thought was the defendant. On one night preceding this examination she stated that she had stepped out of the house, and that some one grabbed her and choked her, and felt under her clothing for the bag in which she carried some money. The defendant was present when she made these statements to the doctor, and made no denial or other statement concerning these statements of Isabella Gatewood. The following morning the doctor again examined Isabella Gatewood and found no bruises on her body, other than the signs of being choked and some rawness of the throat resulting therefrom. On the following Wednesday or Thursday, between the Monday night when she is said to have been choked and the date of her death, and the examination on Monday before the coroner's jury, he, the doctor, saw her upon the gallery at the house of the defendant. That he did not visit her on that occasion, and that she was on the front gallery. That the defendant and the deceased lived immediately behind the residence of Dr. Allen and behind his garden. Also that Sam Hogan's wife, Rosa, lived in the house. The deceased is said to have died on Sunday.

Jerry Butts testified: That he saw the deceased the day before she died. That he called at the defendant's house and asked about Isabella, and that the defendant said she

was doing fine. Witness went away, and came back, and went in the room where Isabella was lying in bed, and saw the blood running out of her left ear, and she made no answer when spoken to. The door to the room was closed and the windows pulled down. That two sisters of the defendant were in the house at the time.

William Douglas testified: That he saw the deceased on Saturday, before she died on Sunday. That he had a hard time getting inside of the house, and that Rosa, the wife of the defendant, and his two sisters, objected to his going inside the house. They said that Isabella Gatewood was lying in a dark room on a bed. That she made one squall, but did not answer when he called her.

Sylvia Van testified that she was at the house of the defendant on Friday evening before she died on Sunday She met defendant on the street before going to the house, and he told her that Isabella was resting very well. She also saw the wife of the defendant, and she said that Isabella was resting well. Defendant's wife and two of his sisters tried to persuade the witness not to go in the house and bother the old lady. She said the old lady in the room was making a great fuss. She was afraid to go in the room, but pushed the door open, and saw her in the dark room.

Dr. Flake testified that on August 10th, preceding her death, he prepared a will for the deceased. This will was introduced in evidence, and shows that the deceased willed the defendant all of her property. He also testified that some time before the death of the deceased she came to his house with the deed that originally conveyed ten acres of land to the defendant, but the number ten had been changed to the number twenty, but the description of the land had not been altered. Deceased was complaining about this deed having been altered.

Charles Anderson testified: That deceased originally had a deposit in the bank of which he was cashier of thirty-two dollars and fifty cents. This deposit was made by the defendant, and all except one dollar was drawn out by

check signed by the defendant as agent of the deceased. This deposit was made by means of a check payable to the deceased, drawn by Ferris & Latimer, for fifty-two dollars and fifty cents, and that the defendant collected twenty dollars cash from the check when he made the deposit. That the deposit slip showed a deposit of fifty-two dollars and fifty cents with notation "less twenty dollars cash." That later some old woman came to the bank with the deposit slip for fifty-two dollars and fifty cents, with the notation "less twenty dollars cash" erased. She thought she had fifty-two dollars and fifty cents and found that she only had thirty-two dollars and fifty cents. She made complaint about this and was very excited. This was about a week or ten days before the death of the deceased.

W. M. Latimer testified: That he was assistant cashier of the Planters' Bank, and that the deceased opened an account with his bank on September 29, 1920, for three hundred sixty-two dollars and fifty-five cents. That deposit was made by the defendant, and remained in the bank about a month, and was drawn out by checks signed by the defendant, as the agent of the deceased.

J. P. Sharp testified: That a week before her death deceased displayed a deed by which she claimed she intended to convey ten acres to the defendant, but that ten acres had been raised to twenty. This deed was typewritten, and the number ten had been changed to the number twenty by handwriting. She complained to the witness, and the witness took her to the office of a lawyer, where the deceased repeated her complaint. The lawyer stated that he had made a change in the figures, and that it had been done in accordance with her request. This lawyer was not introduced, though he was in attendance at the trial.

J. M. Watkins testified: That the defendant and the deceased came to him about a week before her death and wanted to borrow one hundred dollars. That the defendant presented a deed, which purported to convey twenty acres of land to the defendant at the death of the deceased, and that the deceased stated that ten acres of the

land belonged to him. She said that the number ten in the deed appeared to have been altered with pen and ink, so as to read twenty acres. Witness refused to lend the money, unless both the deceased and the defendant gave the deed of trust on the land. The deed of trust was never signed. The deed seen by this witness conveyed twenty acres of land at the death of deceased, with a life estate retained. Witness did not read the description, but said there was a description and it had not been altered.

At the conclusion of this testimony the state rested, and the defendant moved for a directed verdict of not guilty, which being overruled, he rested his case, and the jury found a verdict of guilty, but disagreed as to punishment, and the defendant was sentenced to the penitentiary for life, from which judgment he appeals.

Much of the evidence above set forth was objected to by the defendant, and exceptions taken, and the admission is assigned as error. But in view of the conclusion we have reached it will not be necessary to notice these specific rulings on the evidence. The rules governing cases depending upon circumstantial evidence are well stated in *Algheri* v. *State*, 25 Miss. 584, Morris' State Cases, 658, as follows:

"While circumstantial evidence is in its nature capable of producing the highest degree of moral certainty, yet experience and authority both admonish us that it is a species of evidence in the application of which the utmost caution and vigilance should be used. . . . It is always insufficient where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth. Whenever, therefore, the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be."

It will be noted in the case before us that the wife of the defendant and the two sisters of the defendant were at the house where the deceased was at the time the witnesses testified. There is no evidence at all to show the relationship and circumstances existing between the deceased and these persons. Of course, the wife could not be called against the defendant; but the sisters were competent witnesses, but were not introduced. There is nothing to show who inflicted the blows that produced death. Several persons were in a position to do so and there is nothing to show that one rather than another did it, other than the fact that the defendant would benefit by her death, and that probably he would shield himself from consequences of drawing her money, if, indeed, he did so for his own use. There is nothing in the record to show to what use the money was applied, and nothing to negative the idea or hypothesis that this money may have been applied for the account of the deceased.

The testimony in reference to the death of the deceased is very meager. There is nothing to show any connection between the defendant and her death, other than the fact that she was at his house and he would benefit by her death. There is no connection between the choking of the deceased on Monday preceding her death and her death. Her death did not result from the choking, but clearly resulted from the infliction of the blows. There is no proof whatever to show when, how, where, or under what circumstances these blows were inflicted. The residence of the defendant was in close proximity to the residences of white people and it seems that the proper investigation would have disclosed more than the record discloses. To say the most of it, conceding the facts testified to in the record all to be true, and drawing all logical deductions therefrom, it only shows a mere probability that the defendant was the guilty agent. It certainly does not comply with the rule of excluding every other reasonable hypothesis, nor does it remove all reasonable doubt as required by law. The following cases present facts stronger against the defendants in their

respective cases than the one before us, and yet this court held them insufficient in each case to establish guilt. *John's Case,* 24 Miss. 569. *Morris' State Cases,* 608; *Caleb's Case,* 39 Miss. 721, *Morris' State Cases,* 1490; *Algheri* v. *State,* 25 Miss. 584, *Morris' State Cases,* 658; *Taylor* v. *State,* 108 Miss. 18, 66 So. 321.

The evidence being insufficient to sustain the conviction, the judgment will be reversed, and the defendant discharged.

*Reversed, and defendant discharged.*