MARLAR *v.* SMITH *et al.*

(Division A. Jan. 7, 1924.)

[98 South. 338. No. 23776.]

1. PARENT AND CHILD. *Father entitled to services and earnings of minor child; father may waive right to services and earnings of minor child in part or in full; minor child emancipated to extent of waiver by parent to right to services and earnings.*

    A father is entitled to the services and earnings of his minor child, but he may waive such right at pleasure, which waiver may be partial or in full. And to whatever extent it may be waived results so far in the emancipation of the child who as against his father and his father's creditors is entitled to the fruits of his own services; the future services of a minor child not being such an asset as the debtor father cannot voluntarily divest himself of as against his creditors.

2. PARENT AND CHILD. *Crops raised by emancipated minors held not subject to debt of father.*

    A father who was engaged in other labor gave his two minor children, respectively fifteen and eighteen years of age, the crops they might be able during the current year to make on a piece of land owned by him. A judgment creditor of the father had execution levied on the crop produced by the said minors as the property of their father to which said minors claimed title. *Held*, said minors had been emancipated by their father to the extent of the venture of the making of said crop and therefore said crop was not subject to a judgment against the father; the evidence failing to show that the land so worked by said minors had any leasehold value.

APPEAL from chancery court of Tishomingo county.
HON. A. J. MCINTYRE, Chancellor.

Suit by Oscar Marlar against G. W. Smith and others. From a decree for defendants, plaintiff appeals. Affirmed.

*W. C. Sweat,* for appellant.

There is no intimation in the record that either the boy, or the eighteen-year-old girl, who likewise claimed a part of the cotton, were emancipated. It is elementary that the labor of a minor belongs to the father; and it follows that the production of the minor's labor belongs to the father.

A man must be just before he is generous. He must pay his debts before he gives his property away. This applies just as much to giving property to members of his own family as it does to giving it to strangers. As the labor of the son belonged to the father, there would have been no difference in his saying to his son; "You use your labor to produce this cotton and it will be yours," than in saying: "Take this horse, or this piece of land, and it will be yours." As against a judgment creditor, such a transaction is void unless it is shown that the father has ample property, outside of the gift, out of which the judgment can be satisfied.

In the case of *Epps* v. *Hines*, 27 Miss. 657, 61 Am. Dec. 528, it was held that, where the father gives his son money to defray his expenses in attending college, the money still remains the property of the parent; and, in case it be stolen from the son at an inn, the father is the proper person to sue for its recovery.

I take it that the fact that the services of the child and the property produced thereby belongs to the father is so elementary that it would not be controverted. 20 R. C. L. 607, pt. 19. "The earnings of a minor are in the absence of statute, liable to be taken for the father's debts; and the conveyance by the father to his child of property in payment for the child's services, if the child has not been emancipated, is a voluntary conveyance and void against creditors." 20 R. C. L. 608, pt. 19.

"A conveyance by a father, largely indebted, at the time, to a minor son in consideration of past services of a son for which the father had agreed to compensate him cannot be sustained against the creditors of the father. The conveyance would be binding as between the father

and the son, but would be regarded as purely voluntary as against the creditors of the father." *Dickson* v. *Grissom,* Freem. Ch. 428. "A voluntary conveyance by a debtor to a son is *prima-facie* fraudulent, and it would devolve upon the grantee to show it was not, by proof of ample visible property reserved by debtor for the payment of his debts." *Strong* v. *Paret,* 1 Miss. Dec. 283.

"Where a voluntary conveyance is made by a mother to her son, the fact that she was not actuated by any fraudulent intent and did not even suppose that she was liable for complainant's debt, is not of itself a defense to a bill to set aside the conveyance. Where such facts are not shown, the conveyance will be set aside." *Cock* v. *Oakley,* 50 Miss. 628.

The case of *Schuster* v. *Bauman Jewelry Co.,* 79 Texas, 179, 23 Am. State Reports, 327, is directly in point here. In that case, lands were levied on under a judgment against Schuster, and the defense was that the lands were the separate property of Schuster's wife and not subject to his debts. It was shown that one of these pieces of property had been paid for in part by a pony, which had been given to her by her son, who was nineteen years old, and that he worked and made the money and bought the pony. In passing upon the liability of this piece of property to the debts, the Texas court said: "The father is entitled to the services of his minor son. But he may emancipate him and make his future earnings his own; and it may be that creditors have no claim upon this filial obligation and cannot complain that such action is in fraud of their rights. But until he is emancipated the son's earnings belong to the father, and the creditors of the latter have the same right to look to them and to the property in which they are invested as to any other effects of their debtor."

In the case at bar, the claimant would have to show that he was emancipated before he could possibly be al-

lowed to retain this property as against the judgment creditor of his father.

Emancipation was not known in common law, and, if emancipation is claimed, the fact must be clearly shown. Emancipation is not to be presumed; it must be proved. 20 R. C. L., sec. 20, page 609.

*W. J. Lamb,* for appellee.

In 21 Am. & Eng. Ency. of Law, p. 1059, the text says as follows: "A parent may, by agreement, emancipate his minor child for the whole or any part of the remaining period of minority, and the minor will thus become entitled to his own earnings during the period embraced in the agreement." There are numerous authorities cited to sustain this contention.

Counsel lays great stress on the fact that the father of these claimants could not pay the judgment against him. The law says this makes no difference, and in 21 Am. & Eng. Ency. of Law, page 1060, the text says as follows: "The parent may emancipate his child even though he be involved in a hopeless state of insolvency, and thus place the future services and the earnings of his child beyond the reach of his creditors." Numerous authorities sustain this principle.

In the case of *Cloud* v. *Hamilton,* 30 Tenn. (11 Humphreys) 104, the supreme court of Tennessee says as follows: "If the infant do labor and service for another, without the father's consent, such person will be liable therefor, at the suit of the father. But the father may waive this right for the benefit of his child, and permit him to act for himself, upon his own rights and responsibilities and for his own benefit, and this waiver may appear by express agreement, or be implied from facts and circumstances."

In 21 Am. & Eng. Ency. of Law, p. 1061, the text says on this subject: "After emancipation the father has no

further pecuniary interest in the child's services and earnings, but the right of the minor to demand and recover them is as complete as if he had reached full age; and *a fortiori* the creditors of the parent cannot seize such earnings or any property purchased therewith.'' The text is sustained by the case of *Dickson* v. *Grissom,* Freeman (Miss.) 428, and numerous authorities, and we quote as follows from the opinion of the court, page 433 :''

''Although as a general rule the father is entitled to the services and earnings of his children, resulting from his obligation to support them, yet this is a privilege which the father may waive at his pleasure, or which may be extinguished by operation of law. Such waiver may result from an express agreement to that effect, on the part of the father, or may be implied, from the fact that the conduct of the father went to recognize the minor child as a person *sui juris.''*

29 Cyc. 1673, sets forth: ''Emancipation of a minor occurs by the voluntary act of the parent in surrendering the rights or renouncing the duties of his position, or in some way conducting himself in relation thereto in a manner inconsistent with any further performance of them. The emancipation may be express or implied, or in writing or oral. The test to be applied is that of the preservation or destruction of the parental or filial relations.''

Emancipation of this boy to make that crop could be as perfect and as complete when he was living under the roof of his father, as though they were living miles apart. *Beaver* v. *Bare,* 104 Pa. St. 58, 49 Am. Rep. 567; *Bush* v. *Vought,* 55 Pa. St. 437, 93 Am. Dec. 769; *McCloskey* v. *Cyphert,* 27 Pa. St. 220. The emancipation of the child may be proven by circumstances or by the conduct of the parties.

In 29 Cyc. 1675, the text shows: ''Emancipation of the child from the control of the parent may be shown by circumstances, or inferred from the conduct of the parties.

Subject to the general rules of relevancy, competency, and materiality, any evidence is admissible which legitimately tends to prove or disprove the fact of emancipation.''

In the case of *Haugh, etc., Iron Works* v. *Duncan,* 2 Ind. App. 264, 28 N. E. 334, the court held that the emancipation of a minor could be proven by the act of the father in allowing the minor to draw his own wages, as well as any other acts, and no proof of a formal contract was necessary. The same doctrine is sustained in the case of *Brister* v. *Chicago, etc., Ry. Co.,* 128 Iowa 479, 104 N. W. 487; *Washington* v. *Washington,* 31 S. W. 88.

In the case of *Culberson* v. *Alabama Construction Co.,* 127 Ga. 599, (Am. & Eng. Ann. Cas. Vol. 9, 507), is a case that sustains the appellees in this case, and the footnotes on page 512 refers to the case of *Dickson* v. *Grissom,* Freeman (Miss.) 428, and the footnote in addition, says as follows: ''The decision in the reported case that where a minor child contracts on his own account for his services, and the parent knows of it and makes no objection to the contract or demand for the earnings, there is an implied assent that the minor shall be entitled to his earnings, finds ample support in the authorities. *Kansas City, etc., Ry. Co.* v. *Moon,* 66 Ark. 409, 50 S. W. Rep. 996; *Vance* v. *Calhoun* (Ark. 1005), 90 S. W. Rep. 619; *Burdsall* v. *Waggoner,* 4 Colo. 261; *Nixon* v. *Spencer,* 16 Iowa 214; *Boynton* v. *Clay,* 58 Me. 236; *Merrill* v. *Hussey,* 101 Me. 439, 64 Atl. 819.

The proposition set forth in this case as to whether or not the cotton belonged to the claimants was a question of fact, and the chancellor decided that question in favor of the claimants, and we respectfully submit that ends the controversy, so far as whom the cotton belongs to.

ANDERSON, J., delivered the opinion of the court.

This is an appeal from a final decree of the chancery court of Tishomingo county rendered upon a claimant's issue involving a bale of cotton levied on by an execution issued on a judgment in said court. Appellant Marlar was the judgment creditor, while appellees G. W. Smith

and his wife, Maggie Smith, were the judgment debtors. Appellees Hubert and Cecil Smith, minors, son and daughter of said judgment debtors, were the claimants of the property levied on by execution. Appellant had recovered a personal decree in said court against appellees G. W. Smith and his wife, Maggie Smith, for something over $300. Appellees Hubert and Cecil Smith had during 1922 raised the bale of cotton in question on land belonging to the judgment debtors. Execution was issued on said judgment and levied on the cotton so raised by said Hubert and Cecil Smith. They interposed a claim of title thereto. There was a trial of the claimant's issue and a final decree rendered in favor of appellees Hubert and Cecil Smith, from which appellant, the judgment creditor, prosecutes this appeal.

Appellant's contention is that under the law the services of the said two children Hubert and Cecil Smith, the claimants, belonged to their father and mother, the judgment debtors, and therefore the fruits of their labor, the bale of cotton in question, was the property of the judgment debtors and liable to be taken by said execution; that under the law said judgment debtors as against appellant, their judgment creditor, could not give the claimants, their minor children, the fruits of their labor. On the other hand, said claimants contend that their parents, said judgment debtors, had the right under the law to emancipate them, and had in fact emancipated them, at least as to said crop so raised by them during the year 1922; that the right given them to make said crop and receive the fruits of their labor amounted to partial emancipation with which the appellant as judgment creditor was not concerned.

The chancellor found as evidenced by his opinion and degree in the record, and was justified in so finding by the evidence, that said judgment debtors owned a farm in Tishomingo county; that the father during 1922 had arranged to work at a sawmill; that the land worked by his

children, the said claimants, had not been rented for said year and could not be, and therefore unless worked by his said children would lay idle; that under the circumstances the judgment debtors, the father and mother, told the claimants, their children, that if they could arrange to get a mule to do the plowing and some one to supply the necessary feedstuff for the mule, they could work what land they wanted on the place and have the fruits of their labor; that accordingly claimants secured a mule from their uncle, and bought feedstuff with which to feed it, and made a crop producing the bale of cotton here involved, doing all the work themselves, except a little hoeing done by their mother.

As a general rule, a father is entitled to the services and earnings of his minor child. This results from his obligation to support them. But it is a privilege which the father may waive at his pleasure, and he may waive it in full or partially, and his waiver, or emancipation as it is often denominated, may result from an express agreement to that effect, or it may be implied from conduct and circumstances, and when such emancipation takes place neither the parent nor his creditors will be permitted to assert any right to the subsequent earnings of the child so emancipated. In other words, the services of a minor is not property in the sense that as against the creditors of the parent the latter will not be permitted to give the child the future fruits of such services. The future services of a minor are not such an asset as that the debtor father will not be permitted to voluntarily divest himself of as against his creditors. *Dick* v. *Grissom,* Freem. Ch. 428; 29 Cyc. 673-675; 21 Ency. of Law (2 Ed.), 1061. Applying these principles to the facts as found by the chancellor, it follows, we think, that there was such an emancipation of said claimants by their parents as entitled the former to the crop raised by them of which the bale of cotton in question was a part.

Certainly a judgment debtor cannot make a gift of property to his minor child and thereby defeat his creditor. If the evidence had shown that the leasehold of the land these claimants worked was of any value for the year 1922, there would be presented a different question. That would be property. There is nothing in the record, however, showing any value of the leasehold of the portion of the land worked by said claimants for 1922. On• the contrary, the evidence tends to show, as stated by the chancellor in his written opinion in the record, that the leasehold was of no value because, if said claimants had not worked the land, it would have lain out.

·          *Affirmed.*