HARRIS *v.* STATE.[*]

(Division B. Feb. 4, 1929.)

[120 So. 206. No. 27369.]

(1)

*Corpus Juris-Cyc References: Burglary, 9CJ, section 132, p. 1076, n. 26; section 140, p. 1081, n. 65; Criminal Law, 16CJ, section 1568, p. 764, n. 54; section 2195, p. 874, n. 99; Witnesses, 40Cyc, p. 2593, n. 92; On the question as to sufficiency of circumstantial evidence to support conviction of crime, see 8 R. C. L. 226; 4 R. C. L. Supp. 539; 5 R. C. L. Supp. 457; 6 R. C. L. Supp. 494; 7 R. C. L. Supp. 264.

*Daniel & Greene,* for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J.  The appellant, Meek Harris, was indicted by the gand jury. of the circuit court of Oktibbeha county at the October, 1927, term for burglary of a dwelling house occupied by Evanna Riley, in that he took, stole, and carried away from such house certain goods, to-wit, bedding and clothing belonging to one Evanna Riley of the value of five dollars.

The burglary, the proof shows, occurred on the first Sunday night in December, 1926, while Evanna Riley was at church.  Her testimony is to the effect that she returned from church about nine o'clock; that before leaving she locked the doors of her dwelling, but upon her return from church she found that the house had been broken into and certain things, including the articles described in the indictment, had been taken away.  It does not appear from the evidence that any person was tracked to or from the premises burglarized, nor was the situation, other than as to the condition of the house after the burglary occurred, described by the witness.

On the 16th day of February, 1927, about six weeks after the burglary, an affidavit was made before the justice of the peace that certain property belonging to Evanna Riley was on the 4th day of December feloniously taken, stolen, and carried away, and that suspicion rested upon Meek Harris and Maggie Harris as being guilty of such crime; that such property, or a part thereof, was still in the dwelling house of Meek and Maggie Harris; that upon this information an affidavit and search warrant were issued; and that the officer went to the premises occupied by the defendant and his wife, at night, and found him in bed.  The pillow slips, described

by the witness, Evanna Riley, were found on the pillows of the bed in which the defendant was lying, also the sheets and other bedding, a lambrequin on the mantel, and some of the woman's clothing was found in a trunk or dresser drawer. All of these articles were identified by Evanna Riley and other witnesses as being her property.

It does not appear that Maggie Harris was indicted or charged with this crime. The defendant proved by two seemingly disinterested witnesses, who were not related to him, that at the time the burglary was committed he was not at the scene of the burglary, but at another person's premises, some twelve or fifteen miles away, from about five o'clock in the afternoon until about ten o'clock at night. Meek Harris himself testified that he was on such person's premises on said occasion, and further that he was told by his wife, Maggie Harris, that she bought the goods which were found by the officer from a negro boy by the name of J. D. Swain some time after the burglary was committed. Both the defendant and his wife testified that Swain came to their place some time after the burglary; that, when he approached, the defendant and another man were in front of their dwelling house in conversation, and that Swain had something in a sack or bag which he wanted to sell to him, but that he did not want to buy; that Swain then went into the house where Maggie Harris was and shortly afterwards came out and stated that he had sold her the things. The defendant's statement was corroborated by the other party who was in conversation with him at the time of Swain's appearance, and it does not appear that he was interested or related to the defendant.

Maggie Harris testified that Swain came to her house with the articles which were found therein; that he stated that his mother was moving away and wished to sell such articles; and that she bought the articles from him. Another witness, the mother of Meek Harris, testified that,

on or about the same occasion, Swain came to her place and tried to sell her the things; that she told him that she had no money with which to buy the things; and that he then went to Meek Harris' house, but that she did not know what happened up there.

At the time the search was made, the articles were in the house of Meek Harris visible. No effort was made to conceal them, with the exception of some articles of the woman's clothing which were in the dresser drawer or the trunk, as above stated. The rest of the articles were openly displayed. The officer making the search testified that he did not recall any statement of the defendant at the time as to how possession of the goods was obtained.

It appears further that J. D. Swain left the community about the time of the burglary and went to Arkansas, where his mother had moved shortly before the burglary occurred. Swain was introduced in rebuttal by the state, and testified that he did not have the things and did not sell them either to the defendant or his wife; that he left the community about the time of the burglary, or before; that he did not recall hearing of it before he left; that he left the community some time in December and was gone for a year or a year and a half.

At the time the affidavit and search warrant were introduced in evidence, no objection was made to their introduction; but when the state closed its evidence, motion was made to exclude them on the ground that they did not properly describe the premises to be searched and were too indefinite, etc. We have decided, in cases heretofore, that objection must be made to a search warwant at the time it is offered in evidence, and, if not made then, it is too late subsequently to raise the question of the legality of such search. The affidavit and warrant, it will be noted, do not state that the affiant had good reason to, and did, believe that the goods or property was

in the possession of the defendant, but merely states that he suspected the defendant. There might have been serious question had an objection been properly raised as to the sufficiency of the affidavit and warrant.

Another assignment of error is that the evidence is insufficient to sustain a conviction. We are of opinion that this assignment is well taken, as there was no proof to show that the defendant was present at the time the burglary was committed. Two disinterested witnesses, who were not contradicted in any way, testified that he was not present at the time the burglary was committed, but was some twelve or fifteen miles distant therefrom; and this testimony is not disputed by any witness or by any facts from which contradiction could be inferred, unless it be the naked fact that the articles stolen, or part of them, were found in the house occupied jointly by Meek Harris and his wife. If the defendant, Meek Harris, was not present at the burglary, then, before he could be connected with it as a principal, there must be proof of conspiracy between himself and some person who entered the dwelling and stole the property. It is true that ordinarily where there has been a burglary, and recently thereafter some person is found in possession of the stolen goods, he will be presumed to be the guilty party, in the absence of a reasonable explanation as to how they came into his possession. In the case before us, however, two people occupied the house in which the stolen goods were found. Each was capable of committing a crime and individually responsible to the law for crimes committed. The testimony of all the witnesses, with the exception of Swain, explains the defendant's possession of the goods through the purchase of them by his wife; and the testimony that the defendant was not present at the time the burglary occurred is positively proved by unimpeached witnesses. There is no proof to show where the wife was at such time.

In *Patty* v. *State*, 126 Miss. 94, 88 So. 498, it was held that where an eyewitness was introduced by the defendant and testified to the facts of the homicide, the state having only proved the deceased was killed with a deadly weapon, and that the deceased and the defendant were together a short while before the killing, the presumption of malice from killing with a deadly weapon must yield to the facts, and the jury have no right to disregard arbitrarily undisputed evidence. In the second syllabus of that case, it was held that where eyewitnesses to a homicide can be obtained, they or some of them should be introduced by the state; and where the state fails to call eyewitnesses and the defendant calls them, and they testify to the facts and circumstances of the difficulty or killing and its cause or origin, and such facts are not contradicted by the witness, or by circumstantial evidence of conclusive character, and where the evidence for the defense shows justification for the killing, a conviction cannot be upheld on the mere presumption of malice arising from the use of the deadly weapon.

In *McLeod* v. *State*, 140 Miss. 897, 105 So. 757, it was held that a defendant who testified in defense of his right to carry a concealed weapon while he was traveling, or on a journey beyond the neighborhood of his acquaintance, and such evidence was not disputed by any witness, a conviction could not be upheld. The facts in that case, briefly stated, are: McLeod and two others were traveling from Mt. Olive, in Covington county, Miss., to Chunchula, in the state of Alabama, for the purpose of moving a family from Chunchula, Ala., to Mt. Olive, Miss., to work in a sawmill and on a farm near Mt. Olive. McLeod, in company with the others, went by way of Ellisville on to Richton, in Perry county, where he was arrested on a charge of being partially intoxicated. When arrested, he was searched and a pistol found concealed on his person. The defendant's testimony was to the

effect that he was traveling through a country with which he was unacquainted, and this fact was not contradicted by the evidence. The court held that he was entitled to an acquittal. In this case it was held that the jury have no right to arbitrarily disregard undisputed evidence. In *Jennings* v. *State,* 118 Miss. 619, 79 So. 814, it was held that the law cast no suspicion on the evidence of the defendant. In *Williams* v. *State* (Miss.), 98 So. 338, it was held that mere suspicion created by the evidence alone will not sustain a conviction. The rule in cases of circumstantial evidence is that the proof must not only be consistent with guilt, but must absolutely be inconsistent with any reasonable hypothesis of innocence. *Simmons* v. *State,* 106 Miss. 732, 64 So. 721; *Sorrells* v. *State,* 130 Miss. 300, 94 So. 209; *Hogan* v. *State,* 127 Miss. 407, 90 So. 99; *Nalls* v. *State,* 128 Miss. 277, 90 So. 892; *Algheri* v. *State,* 25 Miss. 584.

Measured by the rules announced in these cases, the evidence is insufficient to support a conviction. Not only does the evidence disclose that two persons occupied the house in which the stolen property was found, but the property was that which would be more attractive to the wife than to the husband, being mostly women's clothing and bedclothes. As stated above, the whereabouts of the wife was not explained in the evidence at the time the burglary occurred. It is not only equally probable that she could be the guilty party, but the probabilities preponderate against her as being that party, because the husband's presence at the time of the burglary is disclosed in the evidence, which is not disputed by any witness in the case. Nor was there any evidence tending to prove a conspiracy with any other person. In addition to the authorities given, see *Pickel* v. *State* (Miss.), 118 So. 625.

The judgment of the court below is therefore reversed, and the appellant discharged.

*Reversed and discharged.*