SMITH, Presiding Justice,
for the Court:
Allen Walker was convicted of grand larceny in the Circuit Court of Pontotoc County and sentenced to three years imprisonment. On appeal he assigns five alleged errors as requiring reversal.
On July 24, 1976, Walker drove from Tu-pelo to Pontotoc for the purpose of having a new battery put in his watch. In the car with him were two friends and a third person who had been “picked up” and with whom they had not been previously acquainted. The name of this person is not known and he is referred to in the record as “Bub” or “Hub.” At Shannon’s Jewelry Store in Pontotoc, Walker went into the store, leaving his friends and Bub in the car. He walked back to the watch repair counter and asked the watch repairman, who was also one of the owners of the store, to test the battery in his watch. Shortly thereafter Bub entered the store.
Subsequently, the other owner of the store returned from lunch and asked Bub if he needed any assistance. He replied in the negative. During all of this time appellant had been at the watch repair counter watching the repairman attempt to fix his watch.
Meanwhile, a young woman had come into the store to pick up a ring she had left to be repaired and the owner (who had just returned from lunch) went to the back of the store to get it, leaving the young woman and Bub standing together at the counter. The repairman having determined that the watch would have to be repaired and that this would take some time, asked Walker to leave it and that he could pick it up later in the afternoon. Walker gave the repairman his name, Allen Walker, and left. At some time a woman employee of the store had left for lunch. Bub had also left the store.
Leaving the store Walker noticed that his car was running hot and that steam was rising from under the hood. Walker was reared in Pontotoc and his mother and father and other relatives still lived there and were known in the community. Walker drove his steaming automobile to the home of his brother-in-law, James Peques, who lived in Algoma, Mississippi, which is approximately five miles outside of Pontotoc.
After being in the back of the store for several minutes, the owner returned to the front with the young woman’s ring. As she was leaving the owner noticed that a tray of men’s diamond rings was missing from a front counter. In order to reach the rings, it would have been necessary for a person standing at the counter to reach across the counter top, unlatch a door at the back, and reach into the counter. The owner asked the young woman if she had observed anything or if she knew Walker or the other man, referring to Bub. She answered these questions in the negative and said that she knew nothing about the missing rings.
When Walker arrived at his brother-in-law’s house he parked his car in the yard and began removing the defective radiator so that it could be sent to town to be repaired. As Walker worked on his car there were several of his acquaintances who were sitting around talking and drinking beer. Three of these people said that Bub had a small box of rings which he had tried to sell.
James Peques, Walker’s brother-in-law, was preparing to go in to town to wash clothes at a Laundromat and Walker asked him if he would take the radiator to be repaired. Peques told him that he would do so and also that he would go by the jewelry store and pick up Walker’s watch. At some time while Peques was absent on these missions, Bub left with one James Williamson and has been neither seen nor heard of since.
Peques duly went to the jewelry store for the watch but the owner would not let him have it. When Peques returned to his home bringing the radiator, which had been repaired, Walker put it back on his car and left to drive to Tupelo, with his two friends. *1331 On the way he was stopped and returned to Pontotoc, where he was arrested and charged with grand larceny.
Although five alleged errors have been assigned, it is necessary to discuss only one: (1) Did the lower court err in refusing appellant’s request for a peremptory instruction?
At the trial, Walker took the stand and testified as a witness in his own defense. His testimony agreed with the above statement of what had occurred. He denied that he had taken the rings and, in fact, it is difficult to see how it would have been possible for him to have done so, since he was at all times at the repair counter, talking to the watch repairman. It is suggested that Bub took the rings and that the evidence was sufficient to support a finding that Walker was implicated with him in the theft. If it can be said to have been established that it was, indeed, Bub who took the rings, there is no evidence that Walker was aware of it or had any part in the theft. As a matter of fact, after discovering that the rings were missing, Walker was the only person who had been in the store who was known to the owners, because he had voluntarily given his correct name when he left his watch for repair.
Moreover, it is difficult to see how the theft could have been accomplished by Bub in view of the contortions necessary to reach the rings, when the whole place was in plain view of the watch repairman, as well as the woman customer, while he was in the store. The owners let the young woman leave, without a search and without obtaining her name, saying that she had on tight clothes and they thought that she had no place where she could have concealed the rings. It was learned later that she was a local person named Thelma Heard, but she is not shown to have had any connection with Walker.
Clearly, the State’s case was entirely circumstantial.
In Hogan v. State, 127 Miss. 407, 90 So. 99 (1921) this Court stated:
‘While circumstantial evidence is in its nature capable of producing the highest degree of moral certainty, yet experience and authority both admonish us that it is a species of evidence in the application of which the utmost caution and vigilance should be used. . . . It is always insufficient where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth. Whenever, therefore, the evidence leaves it indifferent which of several hypotheses is true, or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence cannot amount to proof, however great the probability may be.’
(127 Miss. at 411, 90 So. at 100).
The Court concluded by saying:
To say the most of it, conceding the facts testified to in the record all to be true, and drawing all logical deductions therefrom, it only shows a mere probability that the defendant was the guilty agent. It certainly does not comply with the rule of excluding every other reasonable hypothesis, nor does it remove all reasonable doubt as required by law.

(127 Miss. at 412, 90 So. at 101).
This Court said in Sorrells v. State, 130 Miss. 300, 94 So. 209 (1922):
“. . . The facts may raise a suspicion; ‘but the wisdom of the law is such that it refuses to allow any person to be punished for a crime, however strong and well-founded may be the suspicion.’ There must be proof.”
(130 Miss. at 304, 94 So. at 209).
In the case of Williamson v. State, 229 Miss. 305, 90 So.2d 657 (1956), Williamson was convicted of grand larceny on the theory that he had stolen $140.00 from one Underwood after first having “doped” his bottle of coca cola. The case rested entirely on circumstantial evidence. Williamson appealed on the ground that the trial court erred in failing to grant his request for a peremptory instruction of not guilty. This *1332 Court reversed and discharged Williamson, saying:
. When a case is based on purely circumstantial evidence the proof must be sufficient not only to convince the jury beyond a reasonable doubt of the guilt of the accused, but they must be so convinced to the exclusion of every other reasonable hypothesis consistent with his innocence. Obviously there are a number of other reasonable hypotheses as to what may have become of the billfold in question in the instant case. .
(229 Miss. at 314-315, 90 So.2d at 661).
There is no evidence that Walker personally took the rings and he was, throughout his stay in the store, under the observation of the watch repairman. Morever, he had left his correct name with this individual. The next question is, therefore, whether the evidence was sufficient to exclude every reasonable hypothesis except that Bub took the rings, rather than the young woman or some other person, and, if it was sufficient as to Bub’s guilt, was it also sufficient to exclude every reasonable hypothesis except that Walker was involved with him in the theft. We have concluded that the evidence was not sufficient, judged by the above standards, to implicate Walker in the theft of the rings and that the requested peremptory instruction of “not guilty” should have been granted.
THE JUDGMENT OF CONVICTION. IS REVERSED AND THE APPELLANT IS DISCHARGED.
PATTERSON, C. J., ROBERTSON, P. J„ and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.