WESTBROOK v. STATE.

(Division B.  October 13, 1947.)

[32 So. (2d) 251.  No. 36592.]

**Hugh V. Wall,** of Brookhaven, and **C. F. Cowart,** of Meadville, for appellant.

**Greek L. Rice**, Attorney General, by **R. O. Arrington**, Assistant Attorney General, for appellee.

Argued orally by **Hugh V. Wall,** for appellant, and by **R. O. Arrington,** for appellee.

**Griffith, P. J.,** delivered the opinion of the court.

Appellant was indicted jointly with his brother, Albert Westbrook, for the murder of Paul Walker. A severance was had, and on the separate trial of appellant, hereinafter called the defendant, he was convicted.

The testimony on the part of the prosecution as well as that of the defendant, looking to the entire record, shows overwhelmingly that only two persons took part in the difficulty, the deceased being one of them, of course; and it is undisputed that only one shot was fired. Other than the two participants, the mail carrier was the only person who saw any part of the difficulty or who was near enough at the time to say dependably what happened in it. He says that he was approaching, and that as he came over the hill he saw two men tusseling in the road about 75 or 100 feet from the mailbox. He thought they were boys tusseling in the road, and that he stopped at the mailbox and gave no further attention to the two men until he had finished his duties at the mailbox and had reached the point where the men were, and there he noticed that they had separated and that one of them was staggering as if drunk, and because he feared the staggering man might get in the path of his car, he centered his attention solely on him and as he got to the man he saw that it was Walker. He did not notice and did not recognize the other party. He says he did not see any shooting and did not hear the sound of it. Other than that two persons were present and that he saw them tusseling in the road, the testimony of the mail carrier touches substantially no disputed point material to the case.

It is undisputed that defendant was beaten and bruised about the face and head, and it is undisputed that this was done by the deceased. It is undisputed that in the fight, so called, defendant's glasses were broken and it is undisputed that when the sheriff arrived and made his investigation at the scene, he picked up one of the lenses of the glasses in the road at point A. later to be more particularly mentioned.

Two neighbors who lived about 100 yards from the scene, as they estimate it, but about a quarter of a mile according to other witnesses, arrived upon it almost immediately. They testified that only one person other than the wounded man was there. They further said, however, that the other person was Albert Westbrook and that the defendant was not there. Inasmuch as the undisputed physical facts demonstrate beyond all doubt that defendant was there and inasmuch as there was present only one person other than the deceased, the conclusion is inescapable that the two neighbors in their excitement mistook defendant for his brother Albert, as well may have been because the defendant who wore glasses was then without them and was several yards away, and because defendant at the time lived about twenty miles away and the two witnesses did not know that he had returned the night before on a visit. At any rate, Albert Westbrook was not there and had nothing whatever to do with the difficulty, according to the four corners of this record.

Inasmuch, then, as defendant was the only person present other than deceased, he was the only surviving person who knew the facts of the difficulty. As already stated, the mail carrier passed along the scene, but his testimony does not in any substantial particular displace or dispute the testimony of the defendant.

It has been firmly established by a long line of decisions in this state, of which Weathersby v. State, 165 Miss. 207, 147 So. 481, is typical, that where the defendant is the only surviving witness to a homicide his version of what occurred must, if reasonable, be accepted as true unless substantially contradicted in material particulars by the physical facts or by the facts of common knowledge, and that it is not enough to contradict that version in mere matters of detail which do not go to the controlling substance. It is fundamental that convictions of crime cannot be sustained on proof which amounts to no more than a possibility or even when it amounts to a

probablity, but it must rise to that height which will exclude every reasonable doubt; that when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the state is true, and that throughout the burden of proof is on the state. It is our duty here to maintain these principles.

The car now to be mentioned was parked in front of an unoccupied store building and between that building and the road "just over the edge of the road" with "just room for a car to be parked there for the passenger to come around in the road," to quote a State's witness who was the only witness who located the car with that much precision.

The version of the defendant is that the controversy began as a matter of actual hostility when the deceased approached the car in which the defendant was sitting but with one foot over on the ground, and that when he saw it was the purpose of the deceased to make an actual physical attack upon him, he, the defendant, moved from his position in retreat in a direction somewhat towards that to which the front of the car was pointing, and that he had reached a point estimated by him to be about 20 feet from the car when the deceased actually struck him. This direction and this distance, according to the diagram introduced by the State and verified by the sheriff, would take the participants into and across the road and within about 5 feet of the point of the triangle shown on the diagram. All the testimony agrees that there were signs of a scuffle very near the point of this triangle, and it was at this point, which we will call point A, that the lens from defendant's glasses was picked up by the sheriff.

Apparently, however, it was the theory of the prosecution that the actual difficulty began at a point where there were signs of another scuffle some seven steps from the place at point A, first above mentioned. We will call this other place point B. It was approximately twelve steps across the road and on what is called the east side thereof

directly opposite the rear end of the car, and was near where the tracks of the deceased showed that he turned around or turned back. And as we gather from the trend of the cross-examination of the defendant, it was the purpose of the prosecution to argue in the trial that the defendant had armed himself and had waited until the deceased came along with the design on the part of the defendant to provoke a difficulty with the deceased and to use the weapon in the difficulty thus provoked.

It is enough to say that the above as a hypothesis is infected with at least two infirmities: First, the lens was not found there; and second, the aggressor would have cut the deceased down on the first blow received instead of waiting to be beaten all around the ground—there would never have been another scuffling point. But more important still is the consideration that if the prosecution was to rely, as it must rely, on the circumstantial evidence that actual hostilities began at point B, it was not enough to show that it possibly or even probably began there, but the circumstantial evidence thereof must have been so completely conclusive as to have excluded every other reasonable hypothesis—under the principles which we have heretofore stated. In this there was a manifest failure to sustain the prosecution's contention or theory, and a failure to make out the State's case unless we may say that accepting the defendant's version as true, it presents a question whether he might still be convicted of manslaughter.

It is undisputed that the defendant had the use only of his left arm and hand, his right arm being paralyzed or useless as the result of an injury received forty odd years ago, and it is beyond question that this was known to the deceased who had theretofore been a neighbor of defendant and well acquainted with him for several years.

The deceased was a young man twenty-seven years of age, more than six feet tall and just back from the army. Defendant's version, which must stand as true as already pointed out, is that the deceased persistently, violently,

and without provocation assaulted defendant, repeatedly knocking him down as deceased pursued him, rendering him further helpless by knocking off and breaking his glasses, and that defendant was down on his knees with the deceased still about to be upon him again when defendant fired upon him, striking him at or near the belt of his trousers. The case, then, is on all-fours with Cook v. State, 194 Miss. 467, 12 So. (2d) 137, 138, and it is necessary to do no more than to quote as follows from the concluding paragraph of that opinion: ''The appellant was suddenly, violently and without provocation assaulted by the deceased, who rapidly and continuously struck him with such force as to knock him down twice and to daze him. Because of his age compared with that of the deceased, and the fact that he could use but one hand in defending himself, the appellant was practically at the mercy of his assailant and the only thing he could do to protect himself from the great bodily harm that seemed to be about to be inflicted on him was to secure and use for that purpose the knife that he had in his pocket.''

In that case the verdict and judgment was reversed and the appellant discharged. We follow it and do the like in this case.

Reversed and appellant discharged.