220 So.2d 833 (1969)
Joseph J. MATULA
v.
STATE of Mississippi.
No. 45218.
Supreme Court of Mississippi.
March 31, 1969.
*834 Rex K. Jones, Hattiesburg, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
At the November, 1967 term of the Circuit Court of Forrest County the grand jury indicted appellant Joseph J. Matula jointly with one Joseph R. Brown. The indictment charged that Matula and Brown knowingly did "feloniously conceal, receive or relieve a felon, to-wit, Thomas S. Carroll" or aid or assist him in an attempted burglary of the Capri Lounge, with the intent to enable Carroll to escape or to avoid indictment, trial, conviction or punishment.
Carroll's conviction of the attempted burglary was affirmed by this Court as reported in 215 So.2d 871 (Miss. 1968).
Severance was granted and Matula and Brown were tried separately. Brown's conviction was affirmed as reported in 217 So.2d 521 (Miss. 1969).
Matula was convicted and sentenced to serve a term of 3 years in the penitentiary. He appeals from that conviction.
The evidence adduced at Matula's trial approximates, in most respects, that offered in the Carroll and Brown prosecutions. However, the case against Matula differs in significant and distinguishing particulars from that in Brown, supra, and the evidence that Matula acted knowingly, was entirely circumstantial. The trial court's refusal to direct a verdict of acquittal is assigned as error. The prosecution recognized the circumstantial nature of the case against Matula and the instructions requested by it were based correctly upon the proposition that, in order to warrant conviction, evidence of Matula's guilt must exclude every other reasonable hypothesis.
As in Carroll and Brown, supra, it is beyond question that Carroll, Brown and Matula arrived together at the Stables, a motel at or near Hattiesburg, in a pickup truck with a camper body which belonged to Brown. They obtained a room there together for the night on which Carroll attempted to burglarize the Capri Lounge.
There is no evidence that Matula participated in the actual attempt at burglary nor any to indicate his presence in the vicinity of the Capri Lounge at 1:30 or 2:00 o'clock in the morning when Carroll was detected attempting to break into that establishment.
An indispensable element of the crime charged against Matula is that he acted with guilty knowledge. Crosby v. State, 179 Miss. 149, 175 So. 180 (1937).
In 22 C.J.S. Criminal Law § 31(3) (1961) it is stated:
Ordinarily one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. Without guilty knowledge criminal intent cannot exist.
Also, in 22 C.J.S. Criminal Law § 96 (1961) it is stated:
To render one liable as an accessary after the fact he must have had actual knowledge, at the time he relieved or assisted the principal, that the latter had committed a felony, or was an accessary before the fact to a felony; and such knowledge must be personal as distinguished from constructive. Thus, it has been held that if accused had actual knowledge of facts which would give him good reason to believe the person assisted to be guilty of the felony, this will be sufficient.
On this point, it is undisputed that he was traveling with Carroll and Brown, was *835 with them on the day before and left with them the day after Carroll's crime. Also, he was with Brown when they were arrested at Wiggins.
Perhaps the strongest evidence bearing upon this aspect of the case was testimony of an employee of the motel where the men had obtained a room on the day preceding the attempted burglary. In substance, this was to the effect that the three men had arrived there about 2:00 o'clock in the afternoon of September 15 in Brown's camper truck. Brown paid for the room in advance. The men went to the cabin assigned them, saying that they were tired from their trip from Texas. Shortly afterward, Matula and Carroll came to the motel tavern and drank some beer. They left the tavern about 4:30 after remaining approximately an hour and a half. At 8:00 o'clock that evening they had returned and all three of the men again left the tavern. About 30 minutes later, or at about 8:30, Brown returned but Carroll and Matula did not. The witness did not see any of them again until about 2:00 o'clock on the next afternoon. At that time, she observed all three in the camper truck on U.S. Highway 49, South, heading toward Wiggins with Matula driving. The next appearance of Matula was at a service station in Wiggins where he and Brown were accosted by officers. Brown was questioned by the officers but Matula was not, and he made no statement, incriminating or otherwise.
When the watchman discovered Carroll attempting to break into the Capri Lounge, Carroll had sustained a cut on his wrist as he fled the scene. Nothing is known of his whereabouts from that time (between 1:30 and 2:00 o'clock in the morning) until shortly after noon when he staggered, bloody and fainting, into a florist shop on U.S. Highway 49, South of Hattiesburg. The florist placed Carroll in a truck and started with him to a hospital. But on the way Carroll revived and asked to be and was taken to the motel instead. There is nothing in the record to indicate that Matula was present at any stage of this episode. In any event, Carroll arrived at the hospital at Wiggins about 2:30 that afternoon accompanied by Brown. Again Matula was not shown to have been present and the record is silent as to his whereabouts and movements until he and Brown were arrested at a service station later in the day.
Clothing bearing Matula's laundry mark was found in the motel room at Wiggins which had been assigned to Brown, Matula and Carroll and this was later reclaimed by Matula.
This latter item of evidence, (finding Matula's laundry-marked clothing) is without significance as there is no dispute that Matula was occupying the room with Brown and Carroll.
Carroll was detected before he succeeded in effecting an entry into the building. He had with him at the time a bag of tools which he left at the scene. As the attempt was frustrated in its inception, there were no fruits of the crime to put Matula on notice. Nor is there any evidence in the record that the tools, which may be termed "burglars'" tools more through their use by Carroll in his attempt to effect an entry than by any intrinsic or exclusively burglarious characteristics they possessed, were ever seen by Matula before the attempt by Carroll. It is certain that they were not seen by him afterward.
In this condition of the record, the question is: Was the evidence, and the inferences to be drawn from it, taken most strongly in favor of the prosecution and tending to show that Matula had guilty knowledge of Carroll's crime and, having such knowledge, knowingly aided or assisted him as charged in the indictment, sufficient to exclude every other reasonable hypothesis?
Inference, as used in the statement of the question, means something wholly different from conjecture, speculation or surmise. An inference of guilt may *836 not be drawn from the mere fact that Matula was traveling with Carroll and Brown. Facts not directly proved but which juries legitimately may infer from other facts which have been proved, are limited to such as naturally follow as being logically connected or related, and which reasonably derive from such established facts. It by no means follows that because Matula was traveling with Carroll it may be "inferred," in the absence of all proof, that Carroll confided his guilt to Matula or that Matula learned of it through some other, but unspecified, means. Guilt by association is neither a recognized nor an acceptable concept of the criminal law. Guilty knowledge on the part of Matula that Carroll had committed the crime was an indispensable element of the charge against him and it was necessary that it be proved. Such knowledge would have converted his act in driving the truck the next day from a wholly innocent one to that of aiding and abetting a felon. There is no proof in the record that Matula had this knowledge nor is there proof of any fact from which it legitimately may be inferred.
The question is not whether the evidence is sufficient to show that Matula is probably guilty, nor even whether it proves his guilt beyond a reasonable doubt. The rule is ancient and well established that in cases where guilt must rest upon circumstances, the evidence must exclude every reasonable hypothesis except that of guilt.
We think it clear from the record that the evidence here against Matula fails to meet that standard and that, at the close of the case, he was entitled to have the jury instructed peremptorily to return a verdict of not guilty.
As Justice Griffith said in Westbrook v. State, 202 Miss. 426, 432-433, 32 So.2d 251, 252 (1947):
It is fundamental that convictions of crime cannot be sustained on proof which amounts to no more than a possibility or even when it amounts to a probability, but it must rise to that height which will exclude every reasonable doubt; that when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the state is true, and that throughout the burden of proof is on the state. It is our duty here to maintain these principles.
See also Boyd v. State, 204 So.2d 165 (Miss. 1967); Moore v. State, 188 Miss. 546, 195 So. 695 (1940); Hogan v. State, 127 Miss. 407, 90 So. 99 (1921) and Algheri v. State, 25 Miss. 584, 1 Mor.St.Cas. 658 (1853).
For the reasons stated, the case is reversed and the appellant discharged.
Reversed and appellant discharged.
RODGERS, JONES, PATTERSON and INZER, JJ., concur.
GILLESPIE, Presiding Justice (dissenting):
I respectfully dissent. It will serve no purpose to relate the web of circumstantial evidence that, in my opinion, fully justified the jury in finding that appellant knew that Carroll had attempted the burglary when Matula drove him from Hattiesburg to the hospital at Wiggins, then went to a motel with Carroll and Brown. I believe that when ordinary experience in human affairs is applied to the undisputed facts in this case, the evidence of appellant's guilt was sufficient to justify the jury in believing that it excluded every other reasonable hypothesis than that of guilt.
ETHRIDGE, C.J., and BRADY and ROBERTSON, JJ., join in this dissent.