573 So.2d 719 (1990)
Frederick LEWIS and Anthony Wimberly
v.
STATE of Mississippi.
No. 07-KA-59296.
Supreme Court of Mississippi.
December 19, 1990.
*720 A. Randall Harris, Alvin M. Binder, Binder Milner & Milner, Jackson, for appellants.
Mike C. Moore, Atty. Gen., Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BLASS, JJ.
BLASS, Justice, for the Court:
This case involves two felony shop-lifting convictions. On June 5, 1987, Anthony Wimberly and Frederick Lewis left Wimberly's house in Jackson in Wimberly's station wagon and drove to Starkville, Mississippi. There they visited a woman named Bridgett House. At some point on the trip, Lewis had damaged the electrical plug on the "fuzz-buster." According to Wimberly and Lewis, while they were in Starkville, Ms. House told them they could probably get a new plug at the Wal-Mart store in West Point. Lewis drove to Wal-Mart in West Point. Lewis and Wimberly went into the store together.
On the same morning, Anthony's mother, Yvonne Wimberly, and one Robert Hobbs left Ms. Wimberly's home in Jackson and drove to West Point. They also went to Wal-Mart. Ms. Wimberly and Robert Hobbs travelled in a blue Blazer automobile and Hobbs apparently remained seated in the car outside while she went into the store. Anthony saw his mother just outside the store and later in the store. According to his testimony, it was a pure coincidence that they happened to be in the city the same day and at Wal-Mart at the same time.
Inside the store, a Wal-Mart employee became suspicious of Mr. Wimberly and caused him to be placed under observation by a store security man. The security man testified that he kept Wimberly under observation, and saw a woman, later determined to be Yvonne Wimberly, approach Anthony with a shopping cart which contained a fan in a large box with a VCR in a smaller box under it. While the security man watched, Wimberly opened the fan box and removed the fan, placing it behind some other merchandise, inserted the VCR in its container into the box which had contained the fan. He then took tape which the woman had in the cart, and resealed the fan box containing, now, the much more expensive VCR.
The woman was kept under observation until she moved to the front and left the store, having paid the price marked on the fan package which had the VCR concealed in it. After she was outside the store, the Wal-Mart employee attempted to stop her and get her to come back into the store but she left the shopping cart and got into the blue Blazer. The security man tried to get her to come out and back into the store, but Hobbs started the vehicle, backed it up, running over the feet of the security man and knocking him down. The Blazer crashed into another automobile, then went forward and left the premises at a high rate of speed. One of the employees of the store jumped into his own truck and left in pursuit of the blue Blazer.
*721 Almost simultaneously Wimberly and Lewis came out of the store and went to the station wagon. Wimberly got in to drive. The security man managed to get to them and asked if they had anything that belonged to the store. Wimberly said they did not and drove away. The store official who was pursuing the blue Blazer testified that it was travelling at a high rate of speed and he was attempting to catch up with it when he was passed by the station wagon and recognized the individual who had behaved suspiciously in the store as the driver of the station wagon. The store official was unable to catch up with the speeding vehicles and stopped and called the officers, reporting the event.
About 20 or 30 minutes later the officers found a blue Blazer in the ditch on the side of the road near Artesia. Several persons were around the vehicle and a truck driver, with a rope, was attempting to pull it out of the ditch. The officers inquired about who the vehicle belonged to and Wimberly responded that it was his. He later corrected the statement to say that it belonged to his uncle. Lewis spoke up and indicated that he was also with the vehicle. The station wagon in which Lewis and Wimberly had been riding earlier was parked about 300 yards farther down the road ahead of the Blazer. The officers arrested Wimberly and Lewis and took them back to the police station in West Point. Later, Yvonne Wimberly and Robert Hobbs were located some short distance away, hiding in the bushes. In the bushes along the roadside near the station wagon, the officers found a quantity of merchandise including hair care products, VCRs, and other items.
A clothes hamper box inside the station wagon was found to contain a VCR hidden on the inside. The VCR which had been put into the fan box at the store was found in the shopping cart and recovered. The price of that particular VCR was some $287.86, which was more than the price of the fan. The fan was on sale for $14.95.
Robert Hobbs, Yvonne Wimberly, Anthony Wimberly and Frederick Lewis were indicted by the Grand Jury of Clay County on October 7, 1987 for the crime of felony shop-lifting, the VCR in the fan box being described in the indictment. The parties were released on bail. Robert Hobbs did not return and, apparently, was still at large at the time of the trial. Yvonne Wimberly had become critically ill and was not tried. Anthony Wimberly and Frederick Lewis, however, pled not guilty and were tried on April 7, 1988. Both were found guilty and sentenced to serve a term of five years in the custody of the Department of Corrections, and to pay a fine of $1,000 each. Motion for a new trial was made and overruled and the defendants appealed, raising two assignments of error:
I. Whether or not the due process clause of the Fourteenth Amendment was violated by the introduction of evidence of other crimes, and
II. Whether the verdict of guilty was against the overwhelming weight of the evidence.

DISCUSSION OF ASSIGNMENT OF ERROR I.

WHETHER OR NOT THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT WAS VIOLATED BY THE INTRODUCTION OF EVIDENCE OF OTHER CRIMES.
This record does not contain any evidence of other crimes denominated as such. Rule 404(b), Miss.R.Evid., says, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity of mistake or accident." Wheeler v. State, 536 So.2d 1347, 1352 (Miss. 1988); Griffin v. State, 504 So.2d 186 (Miss. 1987); Neal v. State, 451 So.2d 743, 759 (Miss. 1984). The defendants say that they have no knowledge of the items of merchandise found in the vicinity of the station wagon nor of the VCR in the clothes hamper inside the station wagon. No evidence was offered by the state to show the origin of the goods found.
*722 We do not decide whether or not the fact that the merchandise was found in the bushes and in the station wagon constituted evidence of the commission of other "crimes"[1] by one or more of the participants in this episode. But, conceding, for the sake of discussion, that this evidence was evidence of other crimes, wrongs, or acts, within the purview of 404(b), the evidence is not necessarily rendered inadmissible by the rule. Davis v. State, 530 So.2d 694, 698 (Miss. 1988). It is not admissible to prove the character of a person, in order to show that he acted in conformity with the acts involved in the other crime. The rule is one with many exceptions. The comment to the rule says, in its last line, "It should be noted that the exceptions listed in sub-section (b) are not exclusive." Miss. R.Evid. 404(b) Advisory Committee Note. It has been said that "the exceptions to the rule are probably more numerous than the instances in which the rule applies." Fairbanks v. United States, 96 U.S.App.D.C. 345, 226 F.2d 251, 253 (1955); 29 Am.Jur.2d, Evidence, § 321 (1967). Be that as it may, however, the state's theory in this case was that two or more of the parties were involved in a shop-lifting scam such as the witnesses testified to having observed in this case. In order to establish motive, intent, plan, knowledge, and absence of mistake or accident, therefore, it seems clear to us that the State was properly permitted to show various items of merchandise, some of it similar to that involved here, found and concealed in the woods near the station wagon, and to show that which was located in the station wagon itself. Davis, 530 So.2d at 698; Elmore v. State, 510 So.2d 127, 130 (Miss. 1987); Griffin v. State, 504 So.2d 186 (Miss. 1987). Certainly the presence of these items under the circumstances was sufficient to call for some explanation if they were not the result of the scam detected in this instance. This is clear under the rule and in accord with the prior decisions of this Court. See Neal v. State, 451 So.2d 743 (Miss. 1984); Carter v. State, 450 So.2d 67 (Miss. 1984). A trial judge is allowed considerable discretion as to the relevancy and admissibility of evidence and, unless his judicial discretion is abused, this Court will not reverse his ruling. Shearer v. State, 423 So.2d 824 (Miss. 1983).

DISCUSSION OF ASSIGNMENT OF ERROR II.

WHETHER THE VERDICT OF GUILTY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
With respect to the defendant Anthony Wimberly, this point is so lacking in merit as not to require discussion. See Harris v. State, 527 So.2d 647, 649 (Miss. 1988) (in affirming a felony shoplifting conviction, the Court found that the decision of the jury will not be set aside where there is substantial and believable evidence supporting such conviction). Anthony Wimberly had left Jackson, Mississippi, in a vehicle separate from that in which his mother was riding and they met in front of the Wal-Mart store in West Point, Mississippi. They were seen to meet again inside the store, and Anthony Wimberly was observed as he inserted the VCR container into a larger container, having first removed the fan from that container. He was seen to reseal the fan box in his mother's shopping cart, and she was seen to check out through the line, paying the price which would have been appropriate for the fan removed from the box then containing the VCR.
When the store officials attempted to detain her, she fled. Anthony Wimberly left, almost immediately, driving off after the store officials inquired as to whether he had anything belonging to the store. Shortly thereafter he was found at the scene where the vehicle in which his mother fled from the store was in the ditch. He testified that all of these contacts were pure coincidence. The jury was fully justified in finding him guilty as charged in the *723 indictment. See Miss. Code Ann. §§ 97-23-45, 97-23-47 (1972).
The case of Frederick Lewis presents a different problem. We cannot say that he is actually guilty or innocent. Our function, however, is to review the evidence presented at the trial and, since a jury has found Mr. Lewis guilty, we must determine whether or not a reasonable juror could have properly so found on the evidence presented at this trial. Winters v. State, 473 So.2d 452 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984); May v. State, 460 So.2d 778, 781 (Miss. 1984); Hemphill v. State, 304 So.2d 654, 655-56 (Miss. 1974). After a careful examination of the record, we are compelled to say that the record contains no proof of Lewis's guilt.
Lewis was indicted as a principal, not as an accessory after the fact. See generally, Harris v. State, 290 So.2d 924, 927 (Miss. 1974) (in reversing a conviction for accessory after the fact of burglary, Court found that facts and circumstances known to defendant at time of incident as shown by the proof were wholly insufficient to support the conclusion that he knew a felony had been committed or that he was assisting a felon). The only evidence in the record relating to Lewis with respect to events prior to the shop-lifting incident itself is that he rode with Anthony Wimberly from Jackson to Starkville, and Lewis then drove the car from Starkville to Wal-Mart in West Point.[2]
Lewis was not seen inside the store, so far as the record shows, and his testimony is that he could not find a fuzz-buster and that he was in the sporting goods department looking at fishing gear. There is no evidence that he knew that the shop-lifting episode was taking place nor that it was planned.[3] There is no evidence that he was aware that either Wimberly or Wimberly's mother was involved in such an episode. The record shows that he did ride with Anthony Wimberly when they left the Wal-Mart store, and that Wimberly was driving at a high speed. Lewis did deny that they were speeding, and denied knowing anything about the merchandise near the station wagon or in the station wagon. The record indicates that Lewis drove the station wagon from the point where the blue Blazer was stuck in the ditch to a point about 300 yards further.
With respect to the items found in and around the station wagon, however, it must be remembered that neither Lewis nor Wimberly was charged with respect to any of these items. We come back to the fact that the VCR which was actually taken in this case remained in the shopping cart at Wal-Mart and was never in the station wagon or the blue Blazer. While we understand that Lewis's presence and his conduct following the episode at Wal-Mart casts strong suspicion[4] upon him, we are constrained to say that a reasonable juror, properly understanding the responsibilities of that office could not, under the facts disclosed in this record, have found Lewis *724 guilty beyond a reasonable doubt. See Steele v. State, 544 So.2d 802, 809 (Miss. 1989) (the State may prove a crime by circumstantial evidence, but where the case is based wholly on circumstantial evidence, the State must prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence).
AFFIRMED AS TO WIMBERLY, REVERSED AND RENDERED AS TO LEWIS.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] We note, as does the advisory committee note to Miss.R.Evid. 404(b), that these past acts introduced into evidence may be ones for which the person in question was either convicted or not convicted.
[2] "While keeping in mind that each circumstantial evidence case turns on its own facts, and that it is peculiarly within the jury's province to draw reasonable inferences based upon its own experience and common sense, we have previously rejected the concept of guilt by association." Hester v. State, 463 So.2d 1087, 1093 (Miss. 1985). "Facts not directly proved but which jurors legitimately may infer from other facts which have been proved, are limited to such as naturally follow as being logically connected or related, and which reasonably derive from such established facts." Id. (quoting Matula v. State, 220 So.2d 833, 836 (Miss. 1969).
[3] The Court in Westbrook v. State, 202 Miss. 426, 432-33, 32 So.2d 251 (1947), stated:

It is fundamental that convictions of crime cannot be sustained on proof which amounts to no more than a possibility or even when it amounts to a probability, but it must rise to the height which will exclude every reasonable doubt; that when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the state is true, and that throughout the burden of proof is on the state. It is our duty here to maintain these principles.
[4] "[I]t is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth." Steele v. State, 544 So.2d 802, 809 (Miss. 1989) and Hester, 463 So.2d at 1094, quoting Algheri v. State, 25 Miss. 584, 589 (1853).