ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Steven Eric Dison was convicted of burglary and sentenced as a habitual offender in the Circuit Court of Oktibbeha County. He appeals, asserting two errors: (1) the circuit court erred in not suppressing evidence of his flight after he fled Mississippi while on bond, and (2) the verdict is against the weight and sufficiency of the evidence. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. During the evening of August 18, 2008, Officer Joshua Wilson of the Stark-ville Police Department responded to a call regarding a possible drunk driver in a maroon sedan. While searching for the suspect, Officer Wilson saw a vehicle matching the description of the drunk driver’s vehicle, but this vehicle was dark green. Officer Wilson turned on his blue lights to stop the driver, but the vehicle
 
 *977
 
 accelerated, and a high-speed chase ensued.
 

 ¶ 3. The driver of the vehicle turned into a subdivision and jumped out of the car. Officer Wilson saw a shiny object in the driver’s hand, which he believed to be a weapon, so he took cover behind his patrol car. The driver ran, and Officer Wilson pursued him, but the driver eluded Officer Wilson by running through a briar patch.' Officer Wilson testified that he did not get a good look at the driver, but he did notice that the man had very dark arms. His initial impression, based upon this brief nighttime encounter, was the driver was African American. He also testified that at the time that he exited his patrol car, he thought there might have been a second person in the vehicle. When Officer Wilson returned to the suspect’s vehicle, he saw a man sitting in the passenger’s seat. He commanded the passenger to exit the vehicle and arrested him. According to Officer Wilson, the passenger, later identified as Eric Pepper, said, “I told him not to run.”
 

 ¶ 4. The vehicle was towed and searched for inventory purposes. Officer Wilson stated that he found a jar of change, a Fossil watch, a cell phone, a pocket knife, and a bracelet in the vehicle. He also determined that the vehicle was registered to a person with the last name Dison.
 

 ¶ 5. The next day, Officer Wilson responded to a call regarding a burglary. Stephanie Mallette, the victim, complained that someone had stolen a jar of change, a Fossil watch, and a bracelet from her residence. During the trial, Mallette stated that Dison was one of her roommates. On August 19, 2008, she encountered Dison standing outside the home. She noticed that Dison’s vehicle, which actually belonged to his grandmother, was missing. When Mallette questioned Dison about the missing vehicle, he explained that Pepper had stolen his car and some of his X-Box games from the house. Dison urged Mal-lette to check her room to see if anything had been stolen. Finding that her possessions were missing, Mallette called the police.
 

 ¶ 6. Responding to the reported burglary, Officer Wilson interviewed Mallette. Intrigued by Mallette’s description of her missing property and the identification of Dison, Officer Wilson asked to speak with Dison, who was at the home. Officer Wilson questioned Dison about the events, and Dison was very evasive. Dison was Caucasian rather than African American, but Officer Wilson noticed that Dison’s forearms were heavily tattooed. Officer Wilson also noticed scratches on Dison’s face and arms. He asked Dison to remove his cap and to lift up his shirt. According to Officer Wilson, Dison had numerous scratches on his head, back, stomach, and arms, which would be consistent with scratches that someone would have sustained from running through a briar patch.
 

 ¶ 7. Officer Wilson took Mallette to the impound lot to identify whether her missing items were the same items that were found in Dison’s car. Mallette testified that the jar of change, the Fossil watch, and the bracelet belonged to her, and she identified the cell phone and the pocket knife as belonging to Dison. Based on this information, the police arrested Dison for the burglary.
 

 ¶ 8. Commander Robert Elmore of the Oktibbeha County Sheriffs Department testified that Dison had jumped bond. Di-son was subsequently arrested in Florida on an unrelated charge, but he was using an assumed name and posted a cash bond before Mississippi could make an extradition request. Dison was next arrested in Texas, and from there, he was extradited to Mississippi.
 

 
 *978
 
 ¶ 9. The defense called two witnesses, and recalled Officer Wilson. Pepper was called, but he invoked his Fifth Amendment right. Deputy Bryon Griggs of the Oktibbeha County Sheriffs Department testified that he had responded to a domestic-violence call on August 16, 2008, which involved Dison. Deputy Griggs stated that Dison had blood on his face, which possibly came from a busted nose and/or lips. When questioned by defense counsel regarding whether he saw scratches on Dison, Deputy Griggs stated that he did not notice any scratches on Dison.
 

 ¶ 10. The defense recalled Officer Wilson to testify. It appears that Officer Wilson prepared a report of some kind following the car chase on August 18, 2008, but the report itself was not introduced into evidence. Nevertheless, Officer Wilson testified that he initially identified the driver fleeing the car as an African American, and Dison is Caucasian. The defense’s theory of the case was that an unidentified third person was actually driving the car on the night of August 18, 2008. During Officer Wilson’s testimony during the State’s case-in-chief, he stated that the fleeing driver had very dark arms, and photographs of Dison were introduced. These photographs showed extensive tattooing on Dison’s head, neck, torso and especially forearms, as well as scratches on the same areas of his body which the State contended were consistent with a person running through a briar patch. When the State cross-examined Officer Wilson during the defense’s case-in-chief, Officer Wilson testified that the tattooing on Dison’s arms was so extensive that they did make Dison appear “[d]ark in complexion.”
 

 ¶ 11. Based on this evidence, the jury found Dison guilty of burglary. Dison filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial. The trial court denied Dison’s post-trial motions. Aggrieved, Di-son timely filed this appeal.
 

 ANALYSIS
 

 I. EVIDENCE OF FLIGHT
 

 ¶ 12. Dison argues that the circuit court erred by not excluding evidence that he had jumped bond after being arrested for the burglary, contending that the evidence was irrelevant and prejudicial. The State argues that the evidence of flight was admissible to show Dison’s consciousness of guilt.
 

 ¶ 13. Evidence of flight is admissible to show consciousness of guilt. Amos
 
 v. State,
 
 911 So.2d 644, 654 (¶ 31) (Miss.Ct.App.2005). In cases where a defendant’s flight can be explained by some reason besides his deshe to escape punishment for the crime charged, such as being an escaped prisoner being tried on a charge unrelated to escape, then evidence of flight should not be admitted.
 
 Id.
 
 (citing
 
 Austin v. State,
 
 784 So.2d 186, 195 (¶ 32) (Miss.2001)). In this case, Dison offered no rational explanation for his flight and use of assumed names. Therefore, evidence of his flight was admissible to show consciousness of guilt.
 

 ¶ 14. Dison contends that the circuit court erred in not conducting a balancing test under Mississippi Rule of Evidence 403. However, while the record shows that Dison’s attorney objected to Commander Elmore’s testimony as irrelevant, the attorney failed to make any objection regarding Mississippi Rule of Evidence 403 at trial. “A contemporaneous objection must be made at the time of the testimony, otherwise, the issue is waived on appeal unless a substantial right of the defendant would be violated.”
 
 Willis v. State,
 
 999 So.2d 411, 414 (¶ 9) (Miss.Ct.App.2008) (citing
 
 Williams v. State,
 
 794 So.2d 181, 187 (¶ 23) (Miss.2001)). An ap
 
 *979
 
 pellate court will not normally reverse a circuit court’s decision unless the circuit court was first presented with the issue.
 
 Scarbough v. State,
 
 893 So.2d 265, 272 (¶ 23) (Miss.Ct.App.2004). Dison’s counsel never articulated in his objection that any probative value of the flight evidence was substantially outweighed by its prejudicial effect. We find that Dison’s objection was insufficient to preserve this issue for appeal.
 

 ¶ 15. Moreover, even if this issue had not been waived, it would be without merit. Dison jumped bond in Mississippi and fled to Florida. He was arrested in Sebastian, Florida, where he had given the police an assumed name. When authorities in Mississippi learned of his true identity and location through the Automated Fingerprint Identification System, they contacted authorities in Florida only to learn that Dison had posted a cash bond and been released. He was subsequently arrested again, this time in Texas, and again he was using an assumed name. Eventually, he was extradited to Mississippi. Dison contends this was unduly prejudicial because jumping bond is a crime in and of itself, but the record shows that this was never argued at trial. Moreover, a Mississippi Rule of Evidence 403 balancing test does not exclude all prejudicial evidence; rather, it only excludes evidence if the trial judge concludes that the probative value is substantially outweighed by possible prejudice.
 
 Gore v. State,
 
 37 So.3d 1178, 1184 (¶ 14) (Miss.2010). Further, a circuit court will only be reversed on its decision to admit such evidence if there is an abuse of discretion.
 
 Id.
 
 at 1183 (¶ 13);
 
 see Terrell v. State,
 
 952 So.2d 998, 1005 (¶ 31) (Miss.Ct.App.2006). We find that given the record in this case, even if the issue had not been waived, the circuit court could not be found to have abused its discretion by admitting the testimony going to Dison’s out-of-state flight. This issue is without merit.
 

 II. SUFFICIENCY AND WEIGHT OF THE EVIDENCE
 

 ¶ 16. In determining whether a verdict is supported by sufficient evidence, and whether a motion for a directed verdict or a JNOV should have been granted, the standard of review is whether when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 Ivy v. State,
 
 949 So.2d 748, 752 (¶ 14) (Miss.2007) (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)). Dison contends that the circumstantial evidence in this case is insufficient, and he cities to
 
 Hester v. State,
 
 463 So.2d 1087 (Miss.1985). In
 
 Hester,
 
 the Mississippi Supreme Court quoted the standard of review as to whether circumstantial evidence will be found to be sufficient to sustain a conviction, stating:
 

 It is fundamental that convictions of crime cannot be sustained on proof which amounts to no more than a possibility or even when it amounts to a probability, but it must rise to the height which will exclude every reasonable doubt; that when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the state is true, and that throughout the burden of proof is on the State. It is our duty here to maintain these principles.
 

 Id.
 
 at 1093 (quoting
 
 Westbrook v. State,
 
 202 Miss. 426, 432-33, 32 So.2d 251, 252 (1947)).
 

 ¶ 17. Dison was charged with burglary of a dwelling under Mississippi Code Annotated section 97-17-23(1) (Rev. 2006), which provides that:
 

 
 *980
 
 Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.
 

 In this case, the State was required to prove that Dison broke and entered an inner door in a dwelling with the intent to steal Mallette’s property. Dison argues that circumstantial evidence presented by the State was not sufficient to convict him of the crime. Dison maintains that the evidence proves that he was not the driver who fled from the vehicle because Officer Wilson identified the driver as an African American man. Dison also maintains that Pepper stole both Mallette’s property and his grandmother’s car, and there must have been a third person who was driving the car and that this person was the one that Officer Wilson observed fleeing. Di-son contends that the evidence is insufficient because it does not disprove his hypothesis of an unidentified third man. However, the State is not required to disprove every hypothesis; rather, it must disprove a “reasonable hypothesis.” See
 
 Hester,
 
 463 So.2d at 1093. Even circumstantial evidence can be overwhelmingly convincing.
 
 Moses v. State,
 
 30 So.3d 391, 395 (¶ 16) (Miss.Ct.App.2010).
 

 ¶ 18. The State introduced evidence showing that Dison slept in a bedroom directly next to Mallette’s bedroom. Mal-lette testified she habitually closed her door completely so that it latched securely because she had a roommate who had two cats to which she was allergic. Mallette testified that the cats had a habit of trying to get on her bed, and while the cats had recently moved out with the roommate, she was still in the habit of securely latching her bedroom door. Two days after the car chase, on August 20, 2008, Mallette identified her property that was seized in an inventory search of the vehicle which Dison used as his own and that which had been in the high-speed chase. Dison’s pre-arrest statement in which he accused Pepper of stealing the car was suspicious to say the least since Pepper remained with the car awaiting Officer Wilson’s return after Officer Wilson chased the fleeing driver. Pepper had the opportunity to flee, but did not. Pepper’s property was not found in the car, but Dison’s property was. Officer Wilson testified that Dison was evasive during initial questioning. Di-son had injuries consistent with running through a briar patch, and he did not have these injuries two days prior to the high-speed chase. Dison contends that Officer Wilson’s initial identification of Dison being African American mandates a finding that the fleeing driver was not him. Di-son’s tattoos were consistent with Officer Wilson’s observation of the man who had fled. The photographs of Dison’s arms, head, and torso show extensive tattooing; and in fact, Mallette testified that Dison was employed as a tattoo artist. The evidence of Dison’s heavy, dark tattooing provided the jury with a basis to resolve any apparent inconsistency in Officer Wilson’s testimony. Additionally, Dison’s continued flight through Florida and Texas evidence a guilty conscience. The verdict was supported by sufficient evidence, and there is no merit to this assignment of error.
 

 ¶ 19. In determining whether the weight of the evidence supports a verdict, the standard of review is that an appellate court will only disturb a verdict if the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an uncon
 
 *981
 
 scionable injustice.
 
 Ivy,
 
 949 So.2d at 753 (¶ 21). In this case, there was no direct evidence of Dison being the person who stole Mallette’s property. Nonetheless, the record shows that the jury was given a circumstantial-evidence instruction. Di-son’s theory of the unidentified third man was presented to the jury, and the jury rejected it. The record does not show any error at trial or any indication of unfair prejudice toward Dison. This issue is without merit.
 

 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF BURGLARY AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $10,000 FINE AND $150 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ„ CONCUR.