# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00290-COA

**DONTAVIOUS APPLEWHITE A/K/A**                                 **APPELLANT**
**DANTAVIOUS APPLEWHITE**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

DATE OF JUDGMENT:               03/17/2022
TRIAL JUDGE:                          HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED:   QUITMAN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        KATHRINE COLLINS CURREN
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                     BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:              BRENDA FAY MITCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 05/02/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Dontavious Applewhite was convicted of capital murder with a firearm enhancement

and aggravated assault with a firearm enhancement. The Quitman County Circuit Court

denied Applewhite's post-trial motions. Aggrieved, Applewhite appeals and challenges the

sufficiency and weight of the evidence.

¶2.     Finding no error, we affirm.

## FACTS

¶3.     In the early morning hours of August 6, 2017, officers from the Lambert Police

Department were dispatched to the scene of a shooting in Lambert, Mississippi. Upon

arrival, the officers entered a building and discovered the deceased body of Kelvin Blackburn.

¶4.     After interviewing witnesses at the scene, officers learned that prior to the shooting, Blackburn, along with David Jackson, Jerry Cooley, Jason Roberson, Elliot Hunt, and Mack Riley, were gathered at a table, gambling. Witnesses stated that at some point during the evening, Darrell Walter and Applewhite entered the building and stood near the table where the men were gambling. After observing the men for a period of time, Walter pulled out a gun and held it to Blackburn's head and ordered Blackburn to give him the cash from his pocket. Blackburn tried to grab the gun and wrestle it away from Walter. During the struggle, the other men at the table hid and sought cover. The witnesses reported hearing gunshots coming from inside the building, and then a short time later, they heard more gunshots fired from outside the building. During the altercation, Roberson suffered a gunshot wound to his left arm, for which he sought medical treatment. Blackburn suffered multiple gunshot wounds and succumbed to his injuries before the police officers arrived.

¶5.     Walter and Applewhite were both indicted for one count of capital murder with a firearm enhancement and one count of aggravated assault with a firearm enhancement. Applewhite moved to sever his case from Walter's case, and the circuit court granted the motion.

¶6.     At Applewhite's trial, the jury heard testimony from Hunt, Cooley, Roberson, and Jackson, as well as Denise Lockhart, who was also present in the building on the night of the

2

shooting. The jury also heard testimony from law enforcement officers who arrived at the scene, the medical examiner, an investigator from the Mississippi Bureau of Investigation (MBI), and three employees of the Mississippi Forensics Laboratory. Applewhite moved for a directed verdict at the close of the State's case-in-chief, and the circuit court denied the motion.

¶7. The jury ultimately returned two guilty verdicts, finding that Applewhite acted in concert with Walter to commit armed robbery, resulting in Blackburn's death and a gunshot wound to Roberson. For his capital-murder conviction, the circuit court sentenced Applewhite to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC), with eligibility for parole. For his aggravated-assault conviction, the circuit court sentenced Applewhite to serve ten years in the custody of the MDOC. The circuit court ordered the sentences to run concurrently. The circuit court imposed an additional five-year sentence because of the firearm enhancements, and the circuit court ordered the firearm-enhancement sentence to run concurrently with the aggravated-assault sentence.

¶8. Applewhite filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, in which he challenged the sufficiency and weight of the evidence. Applewhite argued that the State failed to prove that he was involved in the shootings of Blackburn and Roberson. The circuit court denied the motion. This appeal followed.

**DISCUSSION**

3

¶9. Applewhite argues that the State presented insufficient evidence for the jury to find beyond a reasonable doubt that he was guilty of capital murder and aggravated assault. Applewhite also argues the verdict is contrary to the overwhelming weight of the evidence. We disagree.

## I.    Sufficiency of the Evidence

¶10. Applewhite asserts that the evidence presented by the State is insufficient to support his convictions. Specifically, he asserts that the State failed to prove that Applewhite was involved in the shootings of Roberson and Blackburn or that he helped facilitate the robbery. Applewhite submits that as a result, the circuit court erred in denying his motion for a JNOV.

¶11. "A directed verdict, [JNOV,] and a request for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial." *Woods v. State*, 242 So. 3d 47, 54 (¶24) (Miss. 2018). "In reviewing the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Johnson v. State*, 310 So. 3d 328, 331 (¶13) (Miss. Ct. App. 2021) (internal quotation mark omitted). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements; rather, we must decide whether a reasonable juror could rationally say that the State did." *Id*. In the case before us, we must determine whether a reasonable juror could rationally find that Applewhite committed the elements of capital murder with the underlying felony of robbery, as well as the elements of aggravated assault.

4

¶12. Capital murder is "the killing of a human being without the authority of law by any means or in any manner . . . when done with or without any design to effect death, by any person engaged in the commission of the crime of . . . robbery." Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014). We recognize that "unlike other sections of the capital murder statute, subsection 2(e) does not require the prosecution to prove the elements of murder, only that the killing took place while the accused was 'engaged in the commission' of the enumerated felonies." *Story v. State*, 296 So. 3d 104, 116 (¶39) (Miss. Ct. App. 2019) (quoting *Layne v. State*, 542 So. 2d 237, 243 (Miss. 1989)). Therefore, "we must find the evidence sufficient to prove [Applewhite's] participation in the crime of robbery." *Id*.

¶13. As to Applewhite's claim that the State failed to present evidence that he was involved in the shootings, we point out that "proof that [Applewhite] shot or assisted in shooting the victims is not necessary to convict [him] of capital murder." *Id*. at (¶38). Furthermore, to find Applewhite guilty of capital murder, "it is not necessary to prove he committed the robbery himself, only that he acted in concert with [Walter] or aided and abetted [Walter] in robbing [Blackburn]." *Id*. at (¶40). Indeed, "[i]t is well established that any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender." *Id*. at 116-17 (¶40). "In order to be held criminally liable as an aider and abett[o]r in the commission of a felony, one must 'do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime.'" *Sneed v. State*, 31 So. 3d

5

33, 41 (¶24) (Miss. Ct. App. 2009).

¶14.    The record reflects that the jury was instructed on aiding and abetting in the commission of the underlying felony of robbery. Specifically, the jury was instructed that Applewhite would be guilty of capital murder with a firearm enhancement if Applewhite

> individually or while aiding and abetting and/or acting in concert with [Walter], did unlawfully, wilfully and feloniously, without authority of law, and with or without deliberate design to . . . effect death, kill [Blackburn], while . . . individually or while aiding and abetting and/or acting in concert with [Walter] was/were engaged in the commission of the crime of robbery . . . with the use of a firearm.

The jury was also instructed on general aider and abettor culpability by an instruction using identical language adopted by the Mississippi Supreme Court in *Milano v. State*, 790 So. 2d 179, 185 (¶21) (Miss. 2001):

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
>
> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
>
> Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

6

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

*Accord Story*, 296 So. 3d at 117 (¶41).

¶15. At trial, the jury heard testimony from the witnesses who were present at the time of the shooting. Elliot Hunt testified that he and some other men were gathered at Jackson's building at the time of the shooting. Hunt stated that while they were gambling, two men entered the building: Walter and Applewhite. According to Hunt, Walter and Applewhite stood around the table while the others continued to gamble. Hunt stated that at some point, Walter went to the bathroom, and when he came back out, he pointed a gun at Blackburn and said, "Hey, give me the money," referring to the large amounts of cash in Blackburn's shirt pocket.[1] Blackburn tried to take the gun from Walter, and a struggle ensued. Hunt and the other men moved away from the table and tried to hide. Eventually, Blackburn was shot and killed during the struggle. Hunt testified that he did not see Applewhite during this time because he was looking at Walter's gun to make sure that it was not aimed at him.

¶16. Hunt testified that after Walter shot Blackburn, Walter ran out of the building. According to Hunt, Walter then ran back in the building, shot Blackburn again, and left. Hunt testified that he did not see anyone else with a gun that night.

¶17. Jerry Cooley was also gambling at Jackson's building that evening. Cooley stated that

---

[1] Witnesses estimated that Blackburn had anywhere from $4,000 to $14,000 cash in his pocket.

he did not see Applewhite and Walter enter the building because his back was to the door. At one point, Cooley looked back and saw Applewhite standing behind him. Cooley explained that it made him uncomfortable to have Applewhite standing behind him because he "didn't like the way [Applewhite] was looking," so he moved to the other side of the table where he could face Applewhite. Cooley testified that at some point, Walter went to the bathroom. When Walter returned, he pulled out a gun and held it to Blackburn's head, and he ordered Blackburn to give him the money from his pocket. Cooley and the others tried to hide under the table. Cooley testified that he heard multiple gunshots coming from inside the building and then also from outside the building. Cooley explained that he assumed Walter was shooting outside the building to prevent the men from following him out. When the shooting stopped, Cooley came out from under the table and observed that Walter and Applewhite were no longer in the building. Cooley explained that because he had taken cover under the table, he could not see Applewhite during the shooting, nor could he see Walter or Applewhite leave the building. When asked if Walter's gun was the only gun that was fired that night, Cooley answered that he did not know.

¶18.    David Jackson, who owned the building where the shooting occurred, also testified. Jackson stated that when Applewhite and Walter first arrived at the building, they stayed for approximately an hour and then left. After about an hour, Applewhite and Walter returned to the building. Jackson observed Applewhite standing by the table where the men were gambling, and Walter was sitting down. Jackson recounted that at one point, Applewhite was

8

standing behind Blackburn. Jackson testified that Blackburn turned around and told Applewhite not to stand behind him. Jackson testified that he then also instructed Applewhite not to stand behind Blackburn. Jackson stated that Applewhite moved to the opposite side of the table.

¶19. Jackson testified that Walter was the only person he saw with a gun, and he identified Walter's gun as a .22-caliber revolver. Jackson also testified that before that night, no guns had ever been fired inside his building.

¶20. Jason Roberson was the only person present during the shooting who testified that he saw Applewhite with a gun. Roberson stated, however, that he did not see or hear Applewhite fire the gun. Roberson further testified that despite taking cover during the shooting, he suffered a gunshot wound to his left arm.

¶21. Denise Lockhart testified that she was also at Jackson's building on the night of the shooting. Lockhart stated that she was sitting in a recliner, watching TV. Lockhart testified that approximately fifteen minutes after she arrived, Applewhite and Walter entered the building. Lockhart said that Applewhite and Walter greeted her briefly, and then they walked over to the table where the other men were gambling. Lockhart observed Applewhite and Walter talking to each other in low voices, and she testified that she could not hear what they were saying. Lockhart eventually fell asleep in the recliner. Lockhart testified that she woke up when she heard gunshots, and she took cover on the ground in front of the recliner. Lockhart eventually started to get up, but then she heard more gunshots. Lockhart clarified

9

that the shots were fired from inside the building. Lockhart testified that she heard someone say, "They [are] gone," so she stood up. Lockhart stated that by that time, everyone in the building had started to leave. Lockhart testified that when she stood up to leave, she did not see Applewhite or Walter.

¶22. Dr. Mark LeVaughn, the chief medical examiner for the State of Mississippi, testified that Blackburn's autopsy results revealed that he died from multiple gunshot wounds, and he opined that the manner of death was homicide. Dr. LeVaughn stated that several projectiles were recovered from Blackburn's body during the autopsy.

¶23. Officer Stella Keaton with the Lambert Police Department was one of the officers dispatched to the scene of the shooting. Officer Keaton testified that when she walked inside the building, she saw Blackburn on the floor, deceased. Officer Keaton observed shell casings inside the building and outside the building.

¶24. Detective Darryl Linzy with the Quitman County Sheriff's Office was also dispatched to the scene. Detective Linzy testified that after interviewing witnesses at the scene, he developed two suspects in the shootings and robbery: Applewhite and Walter. After Applewhite was located and taken into custody, Detective Linzy collected Applewhite's pants and shoes as evidence and sent them to the Mississippi Forensics Laboratory for testing.

¶25. Steven Little, a serologist at the Mississippi Forensics Laboratory, testified that he swabbed the calf portion of Applewhite's jeans and shoes and found them positive for

Blackburn's blood. Joseph Heflin, a forensic biologist from the Mississippi Forensics Laboratory, also testified that the bottom left leg of Applewhite's jeans and right shoe contained Blackburn's blood.

¶26. Detective Linzy interviewed Applewhite after he was in custody. During the interview, Applewhite admitted that he was present at Jackson's building on the night of the shooting. However, he initially told Detective Linzy that he was not there with Walter and that he did not have a gun. Detective Linzy stated that Applewhite eventually admitted that he had a gun with him that night, which Applewhite described as a .40-caliber semi-automatic gun, but he denied participating in the shooting inside the building. Applewhite maintained that Walter shot Blackburn. Applewhite told Detective Linzy that when he and Walter were outside the building, Walter stole some money from him and ran off. Applewhite claimed that he then chased Walter and fired his gun in the street. Detective Linzy asked Applewhite where his gun was, and Applewhite told Detective Linzy that he did not know. Detective Linzy testified that he was unable to recover Applewhite's gun.

¶27. During direct examination, Detective Linzy testified that Applewhite told him that he fired his gun inside and outside the building. During cross-examination, Detective Linzy reviewed the transcript from his interview with Applewhite, and Detective Linzy clarified that Applewhite never stated that he fired his gun inside the building.

¶28. The State also presented evidence that two different guns were fired in the building on the night of the shooting: a 9mm pistol and a .22-caliber revolver. Amber Conn, a crime

11

scene analyst for MBI, testified that she was called in to work the crime scene. At trial, Conn identified the shell casings recovered from inside and outside Jackson's building as belonging to a 9mm pistol. Mark Boackle, an expert in firearms examination, testified that he classified the shell casings and projectiles, or bullets, recovered from the crime scene and from Blackburn's body. Boackle confirmed the shell casings found inside and outside Jackson's building were from a 9mm pistol. Boackle also identified one projectile recovered from the wall inside the building as being fired from a 9mm pistol. Boackle determined that the other projectiles found at the scene and recovered from Blackburn's body during the autopsy likely came from a .22-caliber revolver. Boackle testified that two projectiles recovered during the autopsy appeared to be damaged .22-caliber projectiles, and a third was "for sure" a .22-caliber projectile. Boackle determined that another projectile recovered from the autopsy "[bore] the similarities" in class with a .22-caliber projectile. Boackle further testified that two other projectile fragments were either so damaged or so small that he could not conclude whether they were a .22-caliber or 9mm projectile.

¶29. Our review of the evidence at trial shows that Walter was the individual who robbed Blackburn at gunpoint. However, we find that the State presented sufficient evidence for a reasonable juror to find that Applewhite acted in concert or aided and abetted Walter in robbing Blackburn, during which time Blackburn was killed and Roberson was shot. Evidence presented at trial confirmed that two guns were present during the shooting: a 9mm pistol and a .22-caliber revolver. Evidence also showed that both guns were fired inside the

12

building. Multiple witnesses testified that they saw Walter with a gun, which Jackson identified as a .22-caliber revolver. Projectiles from a .22-caliber revolver were recovered from Blackburn's body during the autopsy. Roberson testified that he also saw Applewhite with a gun. Applewhite admitted to Detective Linzy that he had a gun while he was at Jackson's building, although Applewhite claimed it was a .40-caliber gun. Applewhite also admitted that he fired his gun outside the building. Witnesses testified that they heard multiple gunshots fired from inside the building, and then additional gunshots fired from outside the building. Cooley testified that although he did not see who was shooting outside the building, he assumed that Walter was shooting outside the building to prevent the men from following Walter out. However, law enforcement only recovered shell casings from a 9mm pistol outside the building, which the State argued was the gun used by Applewhite.

¶30. Viewing the evidence in the light most favorable to the State, we find that there was sufficient proof presented at trial for rational jurors to have found beyond a reasonable doubt that Applewhite was acting in concert with Walter to effect the robbery, during which Blackburn was killed and Roberson was injured.

## II.     Weight of the Evidence

¶31. Applewhite also argues that the verdict was against the weight of the evidence. In support of this assignment of error, Applewhite restates his argument that the State presented no evidence showing that Applewhite participated in the robbery or shooting of Blackburn or the aggravated assault of Roberson.

13

¶32. "A motion for new trial carries a lower standard of review than that for a challenge to the sufficiency of the evidence. A motion for a new trial simply challenges the weight of the evidence." *Cowart v. State*, 178 So. 3d 651, 668 (¶48) (Miss. 2015) (citation omitted). When reviewing a challenge to the weight of the evidence, this Court must determine whether the circuit court abused its discretion by denying a motion for a new trial. *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013). This Court will weigh the evidence in the light most favorable to the verdict, and we will only disturb a verdict when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State,* 233 So. 3d 288, 292 (¶21) (Miss. 2017).

¶33. Here, after viewing the evidence in the light most favorable to the verdict, we cannot say that the jury's finding Applewhite guilty of capital murder and aggravated assault was so contrary to the overwhelming weight of the evidence that allowing it to stand sanctions an unconscionable injustice. The State presented evidence that two guns were fired inside the building at the time of the shooting. The defense argued, however, that evidence of two guns was not sufficient proof to convict Applewhite. The defense asserted that based on the evidence presented, the jury could reasonably find that Walter had the two guns at the time of the shooting and that when Walter began shooting and ran out of bullets, he went outside, got the other gun, and resumed shooting. The record reflects that while some witnesses testified that they did not see Applewhite with a gun at the time of the shooting, these witnesses also explained that as soon as Walter and Blackburn began struggling over the gun,

14

they took cover under the table and could no longer see Walter or Applewhite. The jury also heard testimony from Roberson, who stated that he saw Applewhite with a gun around the time of the shooting. More importantly, the record reflects that Applewhite admitted to Detective Linzy that he had a gun with him at the time of the shooting. The "jury is the sole judge of the weight of the evidence and the credibility of the witnesses, and jurors may choose to believe one witness over another." *Renfro v. State*, 118 So. 3d 560, 564 (¶14) (Miss. 2013). "Moreover, factual disputes are the province of the jury." *Cowart*, 178 So. 3d at 668 (¶48). In this case, the jury found that the weight of the evidence presented against Applewhite was sufficient to convict him of the crimes charged. Affirming this result will not sanction an unconscionable injustice.

## CONCLUSION

¶34. After our review of the record, we find that the evidence was sufficient to convict Applewhite of the charged crimes. The jury's verdict was not against the overwhelming weight of the evidence, and the circuit court did not abuse its discretion by denying Applewhite's motion for a new trial. Accordingly, we affirm Applewhite's convictions and sentences.

¶35. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**WESTBROOKS, J., DISSENTING:**

15

¶36.   Because I would find that the State failed to prove beyond a reasonable doubt that Dontavious Applewhite aided and abetted the principal, Darrell Walter, in the commission of capital murder and aggravated assault, I respectfully dissent.

¶37.   First and foremost, it should be emphasized that this is a circumstantial evidence case. While use of circumstantial evidence is permissible, the sufficiency question posed here is slightly different. *Stephens v. State*, 911 So. 2d 424, 437 (¶43) (Miss. 2005); *Mangum v. State*, 762 So. 2d 337, 344 (¶21) (Miss. 2000) (explaining that "a circumstantial evidence case is one in which there is neither eyewitness testimony nor a confession to the crime"). Certainly, it is well settled that

> [t]he standard of review for the denial of a motion for directed verdict and judgment notwithstanding the verdict is the same. *Shelton v. State*, 853 So. 2d 1171, 1186 (Miss. 2003). A directed verdict and JNOV both challenge the legal sufficiency of the evidence presented at trial. *Id*. The standard is as follows: "this Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Seeling v. State*, 844 So. 2d 439, 443 (Miss. 2003).

*Parks v. State*, 884 So. 2d 738, 743-44 (¶15) (Miss. 2004). However, when a case is based on circumstantial evidence, "[t]he question is not whether the evidence is sufficient to show that [the defendant] is probably guilty, nor even whether it proves his guilt beyond a reasonable doubt. The rule is ancient and well established that in cases where guilt must rest upon circumstances, the evidence must exclude every reasonable hypothesis except that of guilt." *Matula v. State*, 220 So. 2d 833, 836 (Miss. 1969). And this evidence must also "establish a fact above mere suspicion." *Pryor v. State*, 239 So. 2d 911, 913 (Miss. 1970)

16

(citing *Love v. State*, 208 So. 2d 755 (Miss. 1968); *Westbrook v. State*, 202 Miss. 426, 32 So. 2d 251 (1947)). "Mere suspicion, no matter how well grounded, is an insufficient basis upon which to base a criminal conviction." *Oswalt v. State*, 885 So. 2d 720, 723 (¶14) (Miss. Ct. App. 2004). "Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render[, i.e., reverse and discharge]." *Boyd v. State*, 977 So. 2d 329, 336 (¶25) (Miss. 2008) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶38.    Second, the State must prove each element of the crime beyond a reasonable doubt. *Lyles v. State*, 12 So. 3d 532, 541 (¶28) (Miss. Ct. App. 2009). Further, "the jury must be correctly and fully instructed regarding each element of the offense charged." *Id*.[2] To

---

[2] Although no circumstantial evidence instruction was given in this case, according to our Supreme Court's decision in *Nevels v. State*, 326 So. 3d 627 (Miss. 2021), a circumstantial evidence instruction is no longer required:

> We expressly overrule [*Moore v. State*, 247 So. 3d 1198 (Miss. 2018)], and the circumstantial evidence instruction cases on which that opinion relies . . . . As Justice Robertson aptly put it, "the law should not impose a distinction between direct and circumstantial evidence where, at least in the present context, non rationally exists." *Mack* [*v. State*], 481 So. 2d [793], 797 [(Miss. 1985)] (Robertson, J., concurring). Instead, the jury should be "instructed that the law makes no distinction between direct and circumstantial evidence but simply requires that, before convicting a defendant, the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case." *Id*. Jurors should not be concerned about whether evidence is "direct evidence" or "circumstantial evidence." They should consider and weigh all

17

convict a defendant of "aiding and abetting," the State must prove beyond a reasonable doubt that the defendant was (1) actually or constructively present at the scene of the crime and (2) participated in some way that (3) incited, encouraged, or assisted the actual perpetrator in the commission of the crime. *See, e.g.*, *Wofford v. State*, 350 So. 3d 628, 638 (¶27) (Miss. Ct. App. 2022); *Walters v. State*, 218 Miss. 166, 65 So. 2d 465, 468 (1953); *Jones v. State*, 710 So. 2d 870, 874 (¶15) (Miss. 1998).

¶39.    As far back as *McCarty v. State*, 26 Miss. 299, 303 (1853), our supreme court has said that aiding and abetting requires presence and assistance: "If a party be present, with the intention to give assistance, if necessary, in the killing, he would be an aider and abettor, and a principal in the second degree, though his assistance might not be called into actual requisition; because he would give encouragement to the deed." "Presence and intention to aid in the killing have, therefore, very justly been held to amount to participation." *Id*. And over time, we have qualified that presence and intent to aid, without evidence of some participation, is not enough. *Walters*, 65 So. 2d at 465 ("Mere presence, even with the intention of assisting in the commission of a crime cannot be said to have incited, encouraged, or aided the perpetrator thereof, unless the intention to assist was in some way communicated to him." (quoting *Crawford v. State*, 133 Miss. 147, 147, 97 So. 534 (1923)));

---

of the evidence presented. And "[i]f the jury is convinced beyond a reasonable bout, we can require no more." *Holland v. United States*, 348 U.S. [121], 140, 75 S. Ct. 127[, 138 (1954)].

*Nevels*, 325 So. 3d at 634 (¶20).

*Hughes v. State*, 983 So. 2d 270, 276 (¶14) (Miss. 2008); *Crowell v. State*, 193 So. 3d 706, 709 (¶11) (Miss. Ct. App. 2016). "The law does not punish intent which is without influence on an act." *Crawford*, 133 Miss. at 147, 97 So. at 534. "Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime." *Wofford*, 350 So. 3d at 638 (¶27).

¶40. "Aiding and abetting traditionally requires the defendant's presence during the commission of the offense, though that presence may be constructive." *Williams v. State*, 334 So. 3d 68, 74 (¶8) (Miss. 2022). An aider and abettor to the commission of a felony "must do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime . . . or participate in the design of the felony." *Hughes*, 983 So. 2d at 276 (¶14) (internal quotation marks omitted); *Vaughn v. State*, 712 So. 2d 721, 724 (¶1) (Miss. 1998). As a consequence, one who is found guilty of aiding and abetting another in a crime is guilty as a principal. *Hughes*, 983 So. 2d at 276 (¶14); *Swinford v. State*, 653 So. 2d 912, 918 (Miss. 1995). Further, even though aiding and abetting and accessory-before-the-fact are similar in most aspects, such as both crimes require some participation, "[a]iding and abetting and acting as an accessory-before-the-fact are two wholly distinct crimes." *Dilworth v. State*, 909 So. 2d 731, 734 (¶12) (Miss. 2005). The "primary difference is [whether] a person is actually or constructively present at the offense . . . ." *Id.*

19

¶41. It is undisputed that Applewhite was present at the scene on the night of the incident. On the night of August 5, 2017, men of all ages sat around a table "shooting dice" for hours on end at David Jackson's club in Quitman County, until shots were fired in the midnight hour and the individuals dispersed. As a result of the incident, Kelvin Blackburn died, and Jason Roberson was injured. At Applewhite's trial, multiple eyewitnesses testified that Applewhite was there that night.

¶42. As mentioned, in order to prove the second element of aiding and abetting, the State must evidence that the defendant committed some act. *See Evans v. State*, 145 So. 3d 723, 727 (¶19) (Miss. Ct. App. 2014) ("The Mississippi Supreme Court has affirmed numerous convictions of defendants as accessories where the evidence reflected some conduct on the part of the accused which facilitated the consummation of the principal crime." (internal quotation marks omitted)). Of course, that act is not necessarily the final act that led to the completion of the crime. The act, or aid rather, may even be that of a get-away driver. But what remains true is that to aid and abet, one must "manifest[] by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition." *Swinford*, 653 So. 2d at 915 (quoting *Wynn v. State*, 63 Miss. 260, 264 (1885)). This leads to the ultimate issue in the case at hand: What evidence has the State submitted to demonstrate that Applewhite aided and abetted Walter? None.

20

¶43. When reviewing the State's case-in-chief, I kept waiting for some overt act on the part of Applewhite. I kept waiting to see some act committed by Applewhite that advanced these crimes. I kept waiting to see what the jury must have seen, but I do not see any evidence of Applewhite's participation. This leads me to the conclusion that the State did not prove that Applewhite acted in concert with Walter beyond a reasonable doubt. And for the same reasons, the trial court expressed concern. After defense counsel moved for a directed verdict, the trial judge said, "Throughout the testimony on yesterday, actually, there was no testimony at all, regarding aiding and abetting, on behalf of Mr. Applewhite." Yet, the court reasoned,

> [W]hen Mr. Roberson took the stand, he testified that he did see [Applewhite] with a gun. He said that [Applewhite] did not shoot him. He said, but he saw him with a gun. So, now we know that there are two guns at 811 Rice Street.
>
> Based on the testimony of the experts, there were projectiles from a .22 caliber gun. There were also projectiles from a 9mm gun. Therefore, **THE COURT FINDS** that this is sufficient for the jury to make a determination as to whether or not, based on the testimony they've heard, that the second gun that Mr. Roberson testified about [Applewhite] having, was one of the weapons that was used during this robbery and then the eventual murder of Mr. Blackburn, and aggravated assault for Mr. Roberson.

¶44. This was in error. In a recent case, *Buchanan v. State*, 316 So. 3d 619 (Miss. 2021), the Supreme Court reversed this Court's finding that the evidence was sufficient to support the defendant's convictions as an aider and abettor. *Id*. at 631 (¶54). Our Supreme Court stated in *Buchanan* that the fact that the defendant was in close proximity to a pistol six months after the shooting and that he "made no attempt to leave the group" were insufficient

21

to prove beyond a reasonable doubt that "he encouraged or assisted [the principal] prior to or during the shooting." *Id*. at 631-32 (¶¶54, 56). The Court further stated:

> As previously discussed, none of the eyewitnesses to the shooting identified Buchanan as the shooter. Although [a co-defendant] stated that Buchanan was in the very back of the Tahoe, his statement only briefly mentions Buchanan and does not reference anything that Buchanan did or said to aid or abet the shooting. Accordingly, we find there is insufficient evidence to support Buchanan's convictions of aggravated assault.

*Id*. at 632 (¶57). Likewise, here, none of the State's eyewitnesses identified Applewhite as the shooter. In fact, all of the eyewitnesses identified Walter as the one who shot Blackburn. And none of the eyewitnesses testified that Applewhite raised his firearm to shoot. The State's eyewitnesses could only place Applewhite at the scene. Eyewitnesses testified that Applewhite walked in with Walter and did not see when Applewhite left. And even though Roberson testified that Applewhite had a firearm, neither Roberson nor any other witness identified Applewhite as having a 9mm pistol. And ultimately, the singular witness who testified to Applewhite and Walter having some communication with one another, Denise Lockhart, did not testify to the contents of the conversation.

¶45.    In other words, the State's evidence rested upon pure speculation. The only evidence the State had linking Applewhite to the crime was the firearms examiner's testimony, Mark Boackle, who testified that 9mm shell casings were found inside and outside the building. From this, the State asked the jury to infer that (1) Applewhite possessed a 9mm firearm, and (2) Applewhite shot the 9mm firearm in the building to (3) assist Walter in the commission of the crime because other eyewitness testimony evidenced that Walter possessed the

22

.22-caliber revolver. Such conclusions go beyond the bounds of reasonable inferences and reach into speculation. *See Matula*, 220 So. 2d at 835-36. Applewhite must not be convicted for the *likelihood* that he discharged a firearm. *See Hester v. State*, 463 So. 2d 1087, 1094 (Miss. 1985) ("Probability is not proof beyond every reasonable doubt, as is required in a circumstantial evidence case.").

¶46. Furthermore, the State's evidence did not exclude the reasonable hypothesis that Applewhite was innocent. *See McRee v. State*, 732 So. 2d 246, 249 (¶17) (Miss. 1999) ("This evidence viewed in the light more favorable to the State, 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged.'" (quoting *Shields v. State*, 702 So. 2d 380, 382 (Miss. 1997))). Detective Linzy testified that Applewhite told him that he was carrying a .40-caliber semi-automatic gun. In addition, Applewhite told Detective Linzy that he shot at Walter outside the building and after the incident, because Walter had stolen some of his money as well. As we have said, time and again, a defendant is not guilty by association. *Matula*, 220 So. 2d at 836. More importantly, mere presence is not enough. *McCarty*, 26 Miss. at 303 (requiring presence and intent). Surely, if presence and association is not enough, then presence and merely possessing an unidentified firearm is also not enough. Therefore, I respectfully dissent.

**McDONALD, J., JOINS THIS OPINION.**